UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

NICOLE YOUNGBLOOD, by and
through her next friend, SONIA
YOUNGBLOOD,

        Plaintiff,

vs.                                       Case No. 8:02-cv-1089-T-24MAP

SCHOOL BOARD OF HILLSBOROUGH
COUNTY, FLORIDA; SCHOOL DISTRICT
OF HILLSBOROUGH COUNTY, FLORIDA;
DR. KEVIN MCCARTHY, Principal of Robinson
High School, in both his individual and official
capacity; and MR. DAVID FYFE, Vice Principal
of Robinson High School, in both his individual
and official capacity,

        Defendants.
_____/

## ORDER

This cause comes before the Court for consideration of Defendants' Motion to Dismiss (Doc. No. 13, filed July 9, 2002). Plaintiff filed an Opposition thereto (Doc. No. 17, filed July 26, 2002). The Court held oral argument on the motion on August 29, 2002.

The Plaintiff, Nicole Youngblood, is a seventeen year-old who attended Robinson High School until her graduation in December 2001. For senior portraits that were to appear in Robinson High School's yearbook, all females were required to wear a neck drape or wrap and all males were required to wear a white shirt, tie and dark jacket. This case arises because the Plaintiff wanted to wear a white shirt, tie and jacket, instead of the drape. The photographer would not allow the Plaintiff, who is female, to wear the attire that was designated for the male students. The Plaintiff viewed the attire that was designated for the females as "stereotypically


EXHIBIT 2

feminine" and that forcing her to wear such attire would have been "emotionally damaging to her." The Plaintiff alleges that she complained to the vice-principal who, after conferring with the principal, notified her that he and the Principal would not amend the dress policy for senior portraits. The Plaintiff did not take a senior portrait, and Plaintiff's senior portrait did not appear in Robinson High School's yearbook. The Plaintiff did, however, complete her senior year at Robinson High School and graduated in December 2001.

On or about June 19, 2002, the Plaintiff filed the present action in this Court alleging claims of discrimination under federal and state law. Count I of the Complaint is a claim of discrimination under Title IX of the Education Amendment Acts of 1972, 20 U.S.C. § 1681 et seq. Count II of the Complaint is a claim of discrimination under the Florida Educational Equity Act, § 228.2001, Fla. Stat. Count III is a freedom of expression claim under the First Amendment of the Constitution of the United States and § 1983. Count IV of the Complaint is a freedom of expression claim under Article I, § 4 of the Florida Constitution. Count V of the Complaint is an equal protection claim under the Fourteenth Amendment of the Constitution of the United States and § 1983. Count VI of the Complaint is a claim asserted under Article I, § 2 of the Florida Constitution.

The Defendants, School Board of Hillsborough County, Florida; School District of Hillsborough County, Florida; Dr. Kevin McCarthy; and Mr. David Fyfe now move to dismiss all the counts for failure to state a claim upon which relief may be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).[1]

---

[1] Defendants McCarthy and Fyfe have filed a separate Motion to Dismiss on qualified immunity grounds, on which this Court is ruling by separate order.

Standard of Review

In deciding a motion to dismiss, the district court is required to view the complaint in the light most favorable to the plaintiff. Scheuer v. Rhodes, 416 U.S. 232 (1974). A complaint should not be dismissed for failure to state a cause of action "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Bank v. Pitt, 928 F.2d 1108, 1111-12 (11th Cir. 1991) (citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). The Federal Rules of Civil Procedure "do not require a claimant to set out in detail the facts upon which he bases his claim." Conley, 355 U.S. at 47. All that is required is "a short and plain statement of the claim." Fed. R. Civ. P. 8(a)(2). The standard on a 12(b)(6) motion is not whether the plaintiff will ultimately prevail in his or her theories, but whether the allegations are sufficient to allow the plaintiff to conduct discovery in an attempt to prove the allegations. Jackam v. Hospital Corp. of Am. Mideast, Ltd., 800 F.2d 1577, 1579 (11th Cir. 1986). The Federal Rules of Civil Procedure have adopted this "simplified pleading" approach because of "the liberal opportunity for discovery and other pretrial procedures ... to disclose more precisely the basis of both claim and defense ...." Conley, 355 U.S. at 48. The purpose of notice pleading is to reach a decision on the merits and to avoid turning pleading into "a game of skill in which one misstep by counsel may be decisive to the outcome." Id.

Discussion

Defendants first argue that they are entitled to dismissal of Counts I and II of the Complaint because the Plaintiff has not presented allegations that an appropriate person within the school board had actual knowledge of the allegedly discriminatory treatment. Plaintiff

3

counters that she has presented sufficient allegations that a school supervisor with authority to take corrective action, who was high enough up the chain-of-command for his acts to constitute an official decision by the school district itself, had actual knowledge of the alleged bad conduct at issue in this case.

Both parties seem in agreement that the relevant standard for Title IX liability was established in Gebser v. Lago Vista Independent School District, 118 S. Ct. 1989 (1998), in which the Supreme Court concluded that it would not hold a school district liable in damages under Title IX absent actual notice and deliberate indifference. Id. at 2000. In light of Gebser, the Eleventh Circuit has ruled that a Title IX plaintiff must show that some supervisor with authority to take corrective action was placed on notice of the bad conduct and that the supervisor possessing this authority was a school official high enough up the chain-of-command that his acts constituted an official decision by the school district itself not to remedy the misconduct. Floyd v. Waiters, 171 F.3d 1264 (11th Cir. 1999).

The Defendants argue that the Plaintiff has not alleged that a supervisor with authority possessed actual knowledge of the alleged wrongdoing. Plaintiff argues that she has alleged that Defendants Principal Kevin McCarthy and Vice-Principal David Fyfe had the authority to take corrective action, had actual knowledge of the alleged wrongdoing, failed to remedy the misconduct, and are officials high enough up the chain-of-command that their acts constitute an official decision by the school district itself. This Court agrees that the allegations in Plaintiff's complaint are sufficient to withstand Defendant's motion to dismiss on this standard and questions regarding whether or not Defendants McCarthy and Fyfe actually had the authority to take corrective action and are officials high enough up the chain-of-command that their acts

4

constitute an official decision by the school district itself are questions better considered on a motion for summary judgment.

The standard set forth in Gebser, however, presupposes that there has been an act of discrimination. For the reasons set forth below, this Court finds that there has been no discriminatory act and, therefore, no liability under Title IX or the Florida Educational Equity Act.[2]

Defendants next argue that they are entitled to dismissal of the federal and state constitutional claims in Counts III, IV, V and VI of the Complaint because Robinson High School's decision regarding senior yearbook portraits should be evaluated by the local school board, not the courts, as there is no constitutionally protected right involved. This Court agrees.

In Karr v. Schmidt, 460 F.2d 609 (5th Cir. 1972)[3], the Fifth Circuit held that under the Constitution a male student has no protected right to wear his hair in public school in the length and style that suits him and announced a per se rule that hair length regulations implemented by schools are constitutionally valid given the very minimal standard of judicial review to which these regulation are properly subject in the federal forum. See also Ferrell v. Dallas Indep. Sch.

---

[2]Although the language of the Florida Educational Equity Act is not identical to Title IX, the Florida Educational Equity Act seeks to achieve the same goals as Title IX. Therefore, with respect to the Plaintiff's claim for sex discrimination, cases interpreting Title IX apply. See Landow v. School Bd. of Brevard County, 132 F. Supp. 2d 958, 961 (M.D. Fla. 2000)(noting that the Florida Educational Equity Act lists the same factors as Title IX regulations for assessing discrimination and also noting that parties stipulated to using Title IX legal analysis for claims under the Florida Educational Equity Act); Daniels v. School Bd. of Brevard County, 985 F. Supp. 1458, 1459-60 (M.D. Fla. 1997).

[3]The case law of the Fifth Circuit prior to September 30, 1981 has been adopted as precedent in this judicial circuit. Bonner v. City of Prichard, 661 F.2d 1206 (11th Cir. 1981) (en banc).

Dist., 392 F.2d 697 (5th Cir. 1968); Ferrara v. Hendry County Sch. Bd., 362 So. 2d 371 (Fla. 2d DCA 1978); Harper v. Edgewood Bd. of Educ., 655 F. Supp. 1353 (S.D. Ohio 1987).

This Court finds this line of cases very instructive in deciding the case at bar. The cases involving hair length regulations required the males to wear their hair at a certain length not only during school hours and on school campus, but the regulation by necessity affected the student's private life as well. If the courts have found that school boards are able to regulate hair length without intrusion by the courts, then a regulation with less of an effect on the student and their education must go without intrusion by the courts. In other words, Robinson High School's rule that requires a female to wear a drape only once for senior portraits must require even less justification than a school rule requiring hair to be cut, which affects the student 24-hours a day, seven days a week, nine months a year. Plaintiff, unlike the students required to cut their hair, was otherwise free to dress in the manner she felt most comfortable during school hours and on school campus and was never deprived of the opportunity to attend classes or receive an education.

The Karr court noted that its decision

> reflects recognition of the inescapable fact that neither the Constitution nor the federal judiciary it created were conceived to be keepers of the national conscience in every matter great and small. The regulations which impinge on our daily affairs are legion. Many of them are more intrusive and tenuous than the one involved here. The federal judiciary has urgent tasks to perform and to be able to perform them we must recognize the physical impossibility that [the federal judiciary] could ever enjoin a uniform concept of equal protection or due process on every American in every facet of his daily life.

Karr, 460 F.2d at 618.

This Court recognizes that there can be honest differences of opinion as to whether any

6

government, state or federal, should as a matter of public policy regulate what students should wear for their senior portraits, but "it would be difficult to prove by reason, logic, or common sense that the federal judiciary is more competent to deal with [senior portrait attire] than are the local school authorities and state legislatures of all our 50 States. Perhaps if the courts will leave the States free to perform their own constitutional duties they will at least be able successfully to regulate [what] their public school students can wear [for senior portraits]." Id. at 611.

This Court again notes that the intrusion on Plaintiff's life is much less than that found in the hair length cases. The senior portrait attire did not affect Plaintiff's education at all. She was not precluded from attending class due to her decision not to wear the drape for senior portraits. The students in the hair length cases were precluded from attending school and were thereby precluded from their education until they conformed to the hair length regulations. Plaintiff was never forced to conform to wearing the drape at all. The result of Plaintiff refusing to conform to wearing the drape was that Plaintiff did not have a senior portrait appear in the yearbook. She was not, however, precluded from appearing in the yearbook at all.

Following the Karr decision, this Court finds that there is no constitutionally protected right for a female to wear a shirt and tie for senior portraits found within the plain meaning of the Constitution of the United States.

The Plaintiff asserts the First Amendment as a basis for a constitutional right to wear male attire for senior portraits. This Court agrees with the Fifth Circuit's analysis in Karr regarding the protection available under the First Amendment and finds that the right of a female to wear male attire for senior portraits in a public school does not inherit the protection of the First Amendment.

7

The Supreme Court of the United States in <u>Tinker v. Des Moines Independent Community School District</u>, 393 U.S. 503 (1969), held that students wearing black armbands to school to publicize their objection to Viet Nam hostilities was closely akin to pure speech and thus fell within the ambit of the First Amendment. The Court, however, clearly distinguished the case at bar regarding attire for senior portraits. The Court observed:

> The problem posed by the present case does not relate to the regulation of the length of skirts or the type of clothing, to hair style, or deportment.... Our problem involves direct, primary First Amendment rights akin to "pure speech."

<u>Id.</u> at 509.

The court in <u>Karr</u> read this language as indicating that the right to style one's hair as one pleases in public schools does not inherit the protection of the First Amendment. Likewise, this Court finds that the right to wear a particular type of clothing for senior portraits does not inherit the protection of the First Amendment.

Plaintiff also alleges that females being required to wear a drape for senior pictures is gender discrimination protected by the Constitution. Plaintiff cites to many cases in support of her argument that the courts have long held that policies and practices that constrain women within gender stereotypes, or that punish men or women for their failure to conform to gender stereotypes, are unlawful. The cases cited by Plaintiff, however, are easily distinguishable in that they either fall under the purview of Title VII sex discrimination, which admittedly has as its goal to strike at the disparate treatment of men and women in the context of employment, or they involve gender-based policies that affected fundamental rights such as education or equal access to public benefits. Despite Plaintiff's effort to somehow tie senior portraits into the adult world of employment opportunities, senior portraits are not related to the treatment of

8

men and women in an employment context, and they do not constitute nor affect a fundamental right such as education or equal access to public benefits. Again, Plaintiff was not denied an opportunity to attend classes or to obtain equal opportunity to education.

Plaintiff states in her Opposition (Doc. No. 17) that she does not deny that the school district has the right to designate appropriate attire for student yearbook portraits. This Court agrees that appropriate attire must be left in the hands of the officials who have been duly charged with the operation of our schools. Plaintiff's argument then becomes double-faceted. First, the Plaintiff argues that the drape is "ultra-feminine" and somehow "reduces the female 'role' to one of passive decoration rather than active involvement in the world." This objection would arguably be remedied if the school district changed the required senior portrait attire to something feminine[4] yet less "archaic" and "stereotypical," in the Plaintiff's opinion. However, Plaintiff also argues that she should be allowed to dress in male attire for senior portraits because she has not worn a dress, skirt, or other traditionally feminine clothing since she was in first or second grade. The role the Plaintiff seeks this Court to play is one of decision-maker as to what is feminine, what is "ultra-feminine," and what exactly would be most appropriate attire for senior portraits. Some high schools require their males to wear tuxedos and their females to wear drapes for senior portraits. Some high schools require all their students to wear caps and gowns for their senior portraits. Inevitably, there are students in each of these scenarios that are uncomfortable with the attire selected for them for senior portraits. There are males that are uncomfortable with the male attire of coat and tie due to

---

[4] "Feminine" is defined as "female"; "characteristic of or appropriate or peculiar to women." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 837 (1993).

9

their personal dressing preferences or due to the fact that they have never worn a coat and tie before in their lives and plan to never wear a coat and tie again. There are males and females that would prefer to wear something other than their cap and gown. The judiciary is not any more competent to deal with senior portrait attire then is the school system. In the absence of an infringement on a fundamental right as is the case here, this Court defers to the wisdom of the school district to regulate the dress code for senior portraits. Again, this Court finds this matter does not constitute gender discrimination and does not reach the magnitude of a constitutional right.

> State regulations which do not affect fundamental freedoms are subject to a much less rigorous standard of judicial review than is applicable when such fundamental rights are at stake. In such cases, the appropriate standard of review is simply one of whether the regulation is reasonably intended to accomplish a constitutionally permissible state objective. Moreover, the burden is not upon the state to establish the rationality of its restriction, but is upon the challenger to show that the restriction is wholly arbitrary.

Karr, 460 F.2d at 616-17 (citations omitted). This Court finds that the school regulation in this case meets the very minimal standard of judicial review to which this regulation is properly subject.

> [O]rdinarily matters such as these must be left in the hands of the officials who have been duly charged with the operation of our schools. So long as a particular regulation is not "wholly arbitrary," it should be upheld even though it may have the effect of impinging in some small degree upon an individual's freedom to do as he pleases.
>
> Our courts must always be available to resolve the many serious controversies which cannot be avoided in today's complex society. Yet, our judicial system already staggers under a case load which threatens to make ready access to the courts more a myth than a reality. If the courts become embroiled in passing on the constitutionality of every conceivable public school regulation, there is a real possibility that persons with serious and legitimate grievances may never be able to get in the courthouse door.

Ferrara, 362 So. 2d at 375 (Grimes, C.J., specially concurring).

> Federal courts, and particularly those in this circuit, have unflinchingly intervened in the management of local school affairs where fundamental liberties, such as the right to equal education, required vindication. At times that intervention has, of necessity, been on a massive scale. But in the grey areas where fundamental rights are not implicated, we think the wiser course is one of restraint.

Karr, 460 F.2d at 616.

Accordingly, it is **ORDERED AND ADJUDGED** that Defendants' Motion to Dismiss (Doc. No. 13) is **GRANTED**. This case is dismissed for failure to state a claim for which relief can be granted. The Clerk is directed to enter judgment in favor of Defendants and **CLOSE** this case.

**DONE AND ORDERED** at Tampa, Florida, this 24 day of September, 2002.

SUSAN C. BUCKLEW
United States District Judge

Copies to:

Counsel of Record

11

F I L E   C O P Y

Date Printed: 09/26/2002

Notice sent to:     3b 02-1089

    ___ Karen M. Doering, Esq.
       National Center for Lesbian Rights
       3708 W. Swann Ave.
       Tampa, FL  33609-4522

    ___ Shannon Minter, Esq.
       National Center for Lesbian Rights
       870 Market St., Suite 570
       San Francisco, CA  94102

    ___ Courtney Joslin, Esq.
       National Center for Lesbian Rights
       870 Market St., Suite 570
       San Francisco, CA  94102

    ___ Mark R. Brown, Esq.
       Stetson University College of Law
       1401 61st St. South
       St. Petersburg, FL  33707

    ___ Thomas M. Gonzalez, Esq.
       Thompson, Sizemore & Gonzalez, P.A.
       501 E. Kennedy Blvd., Suite 1400
       Tampa, FL  33602-0639

    ___ Richard L. Bradford, Esq.
       Thompson, Sizemore & Gonzalez, P.A.
       501 E. Kennedy Blvd., Suite 1400
       Tampa, FL  33602-0639

