**IN THE UNITED STATES DISTRICT COURT FOR THE**
**SOUTHERN DISTRICT OF MISSISSIPPI**
**JACKSON DIVISION**

**CEARA LYNN STURGIS**                                                **PLAINTIFF**

**VS.**                                        **CIVIL ACTION NO. 3:10cv455-TSL-FKB**

**COPIAH COUNTY SCHOOL DISTRICT;**
**RICKEY CLOPTON, the Superintendent of**
**Copiah County School District; and RONALD**
**GREER, the Principal of Wesson Attendance Center**                 **DEFENDANTS**

**MEMORANDUM IN SUPPORT OF**
**DEFENDANTS' RULE 12(B)(6) MOTION TO DISMISS**

Defendants Copiah County School District ("the District"), Rickey Clopton, and Ronald

Greer, collectively referred to as "Defendants," submit this Memorandum in Support of their

Motion to Dismiss for failure to state a claim upon which relief can be granted under F.R.C.P.

12(b)(6).

**I.     INTRODUCTION**

Plaintiff Ceara Lynn Sturgis ("Ms. Sturgis") is a former student at the District's Wesson

Attendance Center ("Wesson"). See Doc. 3, First Amended Complaint ¶ 9. She graduated from

the school in 2010. Id. at ¶ 1. Just before the fall of her senior year of high school, Ms. Sturgis,

like her classmates, set up a time to have her senior portraits taken. Id. at ¶ 20. She allegedly

became upset when informed that she was not permitted to wear a tuxedo for the portrait, but

instead was required to wear the same "drape" that all female students were required to wear. Id.

at ¶ 21. At Ms. Sturgis's and/or her mother's request, the photographer agreed to take Ms.

Sturgis's photograph wearing the tuxedo. Id. at ¶ 22. However, the school did not include this

photo in the senior portrait section of the yearbook because Ms. Sturgis did not wear the

designated attire. Id. at ¶ 28.

Ms. Sturgis now brings this civil action against Defendants, claiming an entitlement to damages in connection with the refusal to allow her to appear in the senior photo portion of the Wesson yearbook wearing a tuxedo.  In her First Amended Complaint, she asserts two specific claims:  (1) sex-based discrimination in violation of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 et seq.  (against the District only); and (2) sex-based discrimination in violation of the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution (against all Defendants), through 42 U.S.C. § 1983.  Id. at ¶¶ 3, 38.

Based on the controlling authority, as discussed in detail infra, Ms. Sturgis fails to state a claim upon which relief can be granted and therefore, pursuant to Rule 12(b)(6), her claims and First Amended Complaint must be dismissed with prejudice.

## II.     LEGAL DISCUSSION

Under Federal Rule of Civil Procedure 12(b)(6), a case may be dismissed for a plaintiff's failure to state a claim on which relief can be granted.  A court considering a motion to dismiss brought under Rule 12(b)(6) looks to the pleadings and accepts as true those allegations which are well-pleaded and views them favorably towards the plaintiff.  Jones v. Geninger, 188 F.3d 322, 324 (5th Cir. 1999).  In determining whether to grant the motion, the Court considers the allegations detailed in the complaint, exhibits attached to the complaint, and the record.  Wright & Miller, Federal Practice and Procedure: Civil 2d § 1357, p. 299.  Where, as here, a plaintiff is unable to or simply does not assert a set of facts that would support her claim, she fails to state a claim upon which relief may be granted.  Highland Falls-Fort Montgomery Cent. Sch. Dist. v. United States, 48 F.3d 1166, 1169 (Fed. Cir. 1995).  Under these standards, accepting as true the factual allegations asserted by Ms. Sturgis, Defendants are entitled to dismissal of the entirety of Ms. Sturgis's claims.

### A.   **Ms. Sturgis Cannot Maintain An Equal Protection Cause Of Action Under The Fourteenth Amendment Because She Has Not Alleged A Violation Of A Constitutionally Protected Right.**

Ms. Sturgis asserts an equal protection claim against all Defendants, asserting that they are liable pursuant to 42 U.S.C. § 1983 and the Fourteenth Amendment for "promulgating, implementing, ratifying, and/or enforcing rules and acts that deprived Ms. Sturgis of her right to equal protection under the law." See Doc. 3, First Amended Complaint ¶ 38. Specifically, Ms. Sturgis complains that she was not allowed to appear in the senior portrait section of the Wesson yearbook wearing a tuxedo. Id. at ¶ 3. However, Ms. Sturgis has no constitutionally protected right to appear in the yearbook at all, let alone a protected right to appear in the senior photo section wearing a tuxedo. In any suit maintained under 42 U.S.C.A. § 1983, the first inquiry is whether the plaintiff has been deprived of a right secured by the United States Constitution and laws within the meaning of Section 1983. Baker v. McCollan, 443 U.S. 137, 140; 99 S.Ct. 2689 (1979). As shown below, Ms. Sturgis has not alleged, and cannot possibly prove, that a constitutional right has been violated. Consequently, her claims should be dismissed with prejudice.

A Florida District Court has addressed this **exact** set of facts, and explicitly held that the plaintiff had no right secured by the Constitution. Youngblood v. Sch. Bd. of Hillsborough County, Florida, United States District Court, Middle District of Florida, Tampa Division, Case No. 8:02-cv-01089-SCB, Complaint attached as Exhibit 1.[1] By way of an Order dated September 24, 2002, the Youngblood court granted a motion to dismiss for failure to state a claim on which relief could be granted filed by all defendants, including the school district,

---

[1] Exhibits referenced herein are those attached to Defendants' Motion to Dismiss.

principal, and vice principal. See Order, attached as Exhibit 2.[2]  Defendants respectfully suggest that the same ruling is appropriate here for the same reasons.

Though it is unusual to see two lawsuits with identical factual allegations, the allegations brought by the Youngblood plaintiff could not be more similar to those brought by Ms. Sturgis in the instant suit: both alleged that for several years, they had not worn clothing traditionally associated with female attire; both claimed that wearing clothing traditionally associated with the female gender made them uncomfortable and upset;  both desired to wear clothing traditionally associated with the male gender in their senior portraits for inclusion in the senior portrait section of the school yearbook; both schools mandated drapes for girls and tuxedos (the District) or suits and ties (Hillsborough County, Florida) for boys for senior portraits; both plaintiffs are females who were prohibited by the school from appearing in their school yearbook wearing the required male attire in their senior yearbook portraits; both continued their education and graduated on time or early; both brought claims against the school district alleging violations of Title IX and the Equal Protection Clause of the Fourteenth Amendment. (See Doc. 3, First Amended Complaint ¶¶ 1, 17, 21, 22, 26; Ex. 1 ¶¶ 5, 8, 9 10, 11).[3]

The Youngblood court held that based on long-standing precedent (discussed at length below), the plaintiff did not have a constitutionally protected right to have her senior portrait showing her dressed in traditionally male attire published in the school yearbook.  See Ex. 2, p. 5.  In so holding, the Youngblood court cited a number of examples which illustrate why such a policy did not infringe upon a constitutionally protected right or interest and, further, why such a

---

[2] This Order was appealed by the plaintiff, though the appeal was later dismissed upon joint motion by the parties following a non-monetary settlement. See docket sheet, attached as Exhibit 3.

[3] The Youngblood plaintiff also brought additional causes of action against the school district, including claims falling under the First Amendment and several Florida state law claims.  Plaintiff has not asserted any such additional claims here.

policy was not discriminatory.  See Ex. 2, pp. 9-10.  Although not binding precedent, this Court should follow the reasoning of the Youngblood court in granting this Motion to Dismiss.

Moreover, the same long-standing Fifth Circuit Court of Appeals authority involving school dress and grooming codes that were considered "very instructive" by the court in Youngblood are still useful analogies in considering the present case and this Motion to Dismiss. The Fifth Circuit has previously held that a high school's refusal to enroll male students whose long hair violated the school's policy did not amount to a constitutional violation.  Ferrell v. Dallas Ind. Sch. Dist., 392 F.2d 697 (5th Cir. 1968).  The Ferrell students, insisting on longer, "Beatle" type haircuts that violated the school's regulations for male students, were not allowed to enroll.  Among other things, the Fifth Circuit noted that the actions of the school authorities, **even their decision to refuse to admit the students altogether because of the long hair**, did not violate the Fourteenth Amendment of the United States Constitution.  Id. at 701-702.

Several years later, the Fifth Circuit reinforced its precedent allowing schools to set and enforce dress codes and related regulations.  In Karr v. Schmidt, the plaintiff was not allowed to enroll in school due to his refusal to conform to its hair length regulations, and again the court held that a student's right to be free of school regulations governing the length of a student's hair is one that is **not cognizable** in federal courts.  460 F.2d 609, 613 (5th Cir. 1972) (en banc), cert denied, 409 U.S. 989, 93 S.Ct. 307 (1972).  The student was initially successful at the district court level, and was granted an injunction based on the court's holding that the hair length regulation violated the due process and equal protection guarantees of the Constitution.  Id. at 610.  However, the Fifth Circuit stayed the injunction pending appeal and the student requested a lift of the stay.  Id.  In the order denying the student's petition to vacate the stay, Justice Black stated:

I cannot now predict this court will hold that the more or less vague terms of either the Due Process or Equal Protection Clauses have robbed the States of their traditionally recognized power to run their school system in accordance with their own best judgment as to the appropriate length of hair for students.

**There can, of course, be honest differences of opinion as to whether any government, state or federal, should as a matter of public policy regulate the length of haircuts, but it would be difficult to prove by reason, logic, or common sense that the federal judiciary is more competent to deal with hair length than are the local school authorities and state legislatures of all our 50 States.   Perhaps if the courts leave the States free to perform their own constitutional duties they will at least be able successfully to regulate the length of hair their public students can wear.**

Karr, 460 F.2d at 611 (quoting Karr v. Schmidt, 401 U.S. 1201, 91 S.Ct. 592 (1971)(emphasis added).   The Fifth Circuit, following the reasoning of Justice Black's logic, ultimately held that the student did not have a constitutionally protected right to wear his hair long in violation of the school's regulation.   It reversed the district court's order and instructed the district court to dismiss the student's claims for failure to state a claim for which relief can be granted.   Id.

The Karr court further concluded that the hair length regulation met the 'rational basis' standard of review.   Id. at 616.   State regulations which do not affect fundamental freedoms are subject to a much less rigorous standard of judicial review than is applicable when such fundamental rights are at stake.   Id.   In such cases, the appropriate standard of review is simply one of whether the regulation is reasonably intended to accomplish a constitutionally permissible state objective.   Id.   Moreover, the burden is not upon the state to establish the rationality of its restriction, but is upon the challenger to show that the restriction is wholly arbitrary.   Id. at 616-617 (citations omitted).   Under this standard, the Fifth Circuit found that the school authorities in Karr were seeking to accomplish legitimate objectives with their hair regulations.   Id.   Thus, the court found that it was clear error to conclude that the school board regulation failed to meet the minimum test of rationality that was properly applicable.   Id.

It is extremely important to note that the regulation restricting long hair that was upheld in <u>Karr</u> was far more restrictive and intrusive than the plan for the senior portraits in Wesson's yearbook, as it not only precluded those plaintiffs from enrolling in school, but also because conformance with the regulation, by necessity, affected the student's private life as well. "If the courts have found that school boards are able to regulate hair length without intrusion by the courts, then a regulation with less of an effect on the student and their education must go without intrusion by the courts." <u>Youngblood,</u> Ex. 2, p. 6.  As noted by the federal judge in <u>Youngblood,</u> and as is true here, a requirement that the plaintiff wear a drape only once for senior portraits must necessarily require even less justification than a school rule requiring hair to be cut, which obviously affects the student twenty-four hours per day, seven days per week, nine months (or more) per year.

To the contrary, with respect to the yearbook, after Ms. Sturgis completed her portrait sitting, she could have easily removed the drape and returned to wearing her preferred clothing. Ms. Sturgis, unlike the students required to cut their hair, acknowledges that she was otherwise free to dress in the manner she felt most comfortable during school hours and on school campus and was never deprived of the opportunity to attend classes or receive an education.  <u>See</u> Complaint ¶ 17.  Hair length, on the other hand, cannot be changed at the conclusion of a portrait setting, or even at the end of the school day.

Furthermore, Ms. Sturgis was not precluded from attending class or continuing her education due to her decision not to wear the drape for senior portraits. Ms. Sturgis describes an active and admirable high school career, including participation in band, soccer, softball, and basketball teams, academic excellence and membership in the National Honor Society.  <u>See</u> Complaint ¶ 1. In contrast, the students in the hair length cases were precluded from attending

school altogether, and were thereby denied their education until they conformed to the hair length regulations. See Ferrell, 392 F.2d 698. Nevertheless, the Fifth Circuit found that hair regulations in educational settings are permissible under the Constitution.

In sum, Ms. Sturgis was never forced to conform to wearing the drape. The only consequence of her refusal to be photographed in the drape was that her senior portrait did not appear in the senior photo section of the yearbook. She was not, however, prevented from appearing (and in fact did appear) in other portions of the yearbook. Thus, the Fifth Circuit's directive to dismiss cases challenging hair regulations should apply with equal (or more) force to Ms. Sturgis's challenge of the decision regarding student dress for senior yearbook portraits.

Crucially, the Fifth Circuit, sitting en banc, concluded its Karr opinion with specific instructions to district courts that are confronted with challenges to hair length and other grooming regulations:

> Given the very minimal standard of judicial review to which these regulations are properly subject in the federal forum, we think it proper to announce a per se rule that such regulations are constitutionally valid. Henceforth, district courts need not hold an evidentiary hearing in cases of this nature. **Where a complaint merely alleges the constitutional invalidity of a high school hair and grooming regulation, the district courts are directed to grant an immediate motion to dismiss for failure to state a claim for which relief can be granted.**

Karr, 460 F.2d at 617-18 (emphasis added). The Fifth Circuit's mandate in Karr is thus clear: The judiciary should not be involved in evaluating whether a particular dress code or grooming regulation satisfies the Constitution. Instead, the Fifth Circuit has determined that these matters should be resolved by local school authorities. Applying Karr to the present case leads to the undeniable conclusion that the decision regarding senior yearbook portraits should be evaluated by the local school authorities, as it was here, and not the courts. The Karr court noted that its holding that the plaintiff did not have a constitutionally protected right to be free of

the school district's hair length regulations

> evinces not the slightest indifference to the personal rights asserted by [plaintiff] and other young people. Rather, it reflects recognition of the inescapable fact that neither the Constitution nor the federal judiciary it created were conceived to be keepers of the national conscience in every matter great and small. The regulations which impinge on our daily affairs are legion. Many of them are more intrusive and tenuous than the one involved here. The federal judiciary has urgent tasks to perform and to be able to perform them we must recognize the physical impossibility that [the federal judiciary] could ever enjoin a uniform concept of equal protection or due process on every American in every facet of his daily life.

Id. at 618. Determination of such a mundane detail of school life as what attire will be considered appropriate for yearbook photos must be, and should be, left in the hands of the officials who have been duly charged with the operation of our schools, and not the courts. As the Florida district court stated when dismissing the Youngblood lawsuit:

> Some high schools require their males to wear tuxedos and their females to wear drapes for senior portraits. Some high schools require all their students to wear caps and gowns for their senior portraits. Inevitably, there are students in each of these scenarios that are uncomfortable with the attire selected for them for their senior portraits. There are males that are uncomfortable with the male attire of coat and tie due to their personal dressing preferences or due to the fact that they have never worn a coat and tie before in their lives and plan to never wear a coat and tie again. There are both males and females who would prefer to wear something other than their cap and gown for senior portraits. **The judiciary is not any more competent to deal with senior portrait attire than is the school system. In the absence of an infringement on a fundamental right as is the case here, the Court defers to the wisdom of the school district to regulate the dress code for senior portraits**.

Youngblood, Ex. 2, p. 10 (emphasis added).

Ms. Sturgis essentially asks this Court to act as decision maker not on what attire is appropriate for school (she admits she wore whatever she wanted all year), nor even what attire is appropriate for senior portraits (she attaches as Exhibit "B" her senior photo in a tuxedo), but rather, what attire is appropriate with respect to what senior photos are printed in the yearbook. Based on clear precedent, this Court is "no more competent to deal with senior portrait attire than

is the school system," (Youngblood), and furthermore, "is directed to grant an immediate motion

to dismiss for failure to state a claim for which relief can be granted" (Karr, 460 F.2d at 617-18.)

in instances such as this.

Other Fifth Circuit and district courts within its purview have also consistently upheld the

right of schools to decide on their dress and grooming regulations set forth.  Even before the Karr

decision, the Fifth Circuit held that a school regulation requiring male students to shave did not

amount to an equal protection violation.   Stevenson v. Bd. of Educ. Of Wheeler County,

Georgia, 426 F.2d 1154 (5th Cir. 1970).   In 2006, the United States District Court for the

Western District of Louisiana granted summary judgment in favor of a school district's

prohibition of braids for male students.  Fenceroy v. Morehouse Parish Sch. Bd., 2006 WL

39255, *3 (W.D. La. Jan. 6, 2006).

Other jurisdictions have held similarly.   Relying on Karr and other Fifth Circuit

precedent, the Eleventh Circuit upheld a school requirement that student athletes must remain

clean-shaven in order to participate in school athletics.  Davenport v. Randolph County Bd. of

Educ., 730 F.2d 1395, 1397-98 (11th Cir. 1984).   An Ohio district court case offers further

support for Defendants' position.  See Harper v. Edgewood Bd. of Educ., 655 F.Supp.1353 (S.D.

Ohio 1987).   In Harper, two high school students, a brother and a sister, brought an action

against the local board of education and various school officials because they were not permitted

to attend their high school prom dressed in clothing of the opposite sex.  The brother arrived at

the prom dressed in women's clothing (earrings, stockings, high heels, a dress, and a fur cape).

Id. at 1354.  His sister arrived wearing a black tuxedo and men's shoes.  Id.  At the request of the

school officials, both plaintiffs were escorted out of the prom.  Id.  The students asserted that the

school district's actions violated their constitutional rights.

The <u>Harper</u> court concluded that the school board's dress regulations were reasonably related to valid educational purposes of teaching community values and maintaining school discipline. <u>Id.</u> at 1355 (citing <u>Davenport v. Randolph County Bd. of Educ.</u>, 730 F.2d 1395 (11th Cir. 1984)).   The court also held that the school district's actions did not violate the students' rights under the Equal Protection Clause of the Fourteenth Amendment. <u>Id.</u> at 1356.   The court rejected the claim that the school board discriminated on the basis of sex by allowing female students, but not the male plaintiff, to wear dresses, and by allowing male students, but not the female plaintiff, to wear tuxedos.   <u>Id.</u>.   The court found that the school dress code did not differentiate based on sex since it required all students to dress in conformity with the accepted standards of the community.   <u>Id.</u>  In its order granting summary judgment in favor of the school district, the Court noted that **"the responsibility for maintaining proper standards of decorum and discipline and a wholesome academic environment... is not vested in the federal courts, but in the principal and faculty of the school...."**   <u>Id.</u> (quoting <u>Jackson v. Dorrier</u>, 424 F.2d 213, 218-19 (6th Cir. 1970)(emphasis added)).

The Ohio district court's reasoning in <u>Harper</u> is wholly consistent with the Fifth Circuit's reasoning in <u>Karr</u>.  Applying this established precedent to the present case leads to the logical conclusion that Ms. Sturgis's constitutional challenge of the school's requirements regarding senior yearbook portraits cannot survive Rule 12(b)(6)'s dismissal standards.

Ms. Sturgis's First Amended Complaint completely fails to assert the deprivation of anything that rises to the level of a constitutionally protected right.  Ms. Sturgis simply disagrees with the manner in which Defendants have regulated senior yearbook portraits.  Federal courts have historically intervened in local school affairs only when <u>fundamental</u> liberties have been at stake.  "But in the grey areas where fundamental rights are not implicated, we [the Fifth Circuit]

think **the wiser course is one of restraint**." Karr, 460 F.2d at 616 (emphasis added).

For these reasons, Ms. Sturgis's Fourteenth Amendment claims brought pursuant to 42 U.S.C. § 1983 should be dismissed with prejudice.

### B.   Ms. Sturgis Has Not Adequately Plead, Nor Can She Show, The Involvement Of A Policymaker Sufficient To State A Claim Under Section 1983.

In order for a school district to be liable under Section 1983, the plaintiff must establish, "(1) a policymaker; (2) an official policy; and (3) violation of constitutional rights whose moving force is the policy or custom." Hampton Co. Nat. Sur., LLC v. Tunica County, Mississippi, 543 F.3d at 227 (5th Cir. 2008) (quoting Piotrowski v. City of Houston, 237 F.3d 567, 578 (5th Cir. 2001)). Who is considered a policymaker is a question of state law. Jett v. Dallas Independent School Dist., 7 F.3d 1241, 1245 (5th Cir. 1993). School boards constitute the sole policymaker for school districts in Mississippi.[4] Ms. Sturgis has not alleged or described an official school board policy, or indeed that the school board was involved in the decision at issue at all. Ms. Sturgis cannot satisfy a required element needed to establish liability under Section 1983. As such, Ms. Sturgis's Section 1983 claims must dismissed against all Defendants.

### C.   Ms. Sturgis Has Not Adequately Plead, Nor Can She Show, An Official Custom Or Policy Caused Her Injury.

In addition, like municipalities, school boards cannot be sued under section 1983 unless a plaintiff sufficiently demonstrates injury from an official policy or custom, as distinguished from mere tortious conduct. See, e.g., Beattie v. Madison County Sch. Dist., 254 F.3d 595, 600 n.2 (5th Cir. 2001). "Only upon a demonstration of a policy or custom to violate the constitution, which is not to be confused with proof of policies supporting tortious conduct, can the municipality be held liable under section 1983." Brown v. City of Hazlehurst, 741 So.2d 975,

---

[4] Miss. Code Ann. § 37-7-301(l) states that school boards are vested with the power "to prescribe and enforce rules and regulations not inconsistent with law or with the regulations of the State Board of Education for their own government and for the government of the schools, and to transact their business at regular and special meetings called and held in the manner provided by law."

981 (Miss. Ct. App. 1999). In <u>Brown</u>, the court re-emphasized that a policy or custom must be identified with specificity, stating:

> [A] plaintiff must allege that the custom or policy served as the moving force behind the constitutional violation, or that her injuries resulted from the execution of the official policy or custom. The description of a policy or custom and its relationship to the underlying constitutional violation, moreover, cannot be conclusory; it must contain specific facts.

<u>Brown</u>, 741 So.2d at 981. Absent injuries caused by an illegal custom or policy, a governmental entity is immunized from liability. <u>Williams v. Lee County Sheriff's Dept.</u>, 744 So.2d 286, 298-99 (Miss. 1999). In the Fifth Circuit, to qualify as a custom or policy the practice must have occurred for so long, or so frequently, that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice. <u>Webster v. City of Houston</u>, 735 F.2d 838, 842 (5th Cir. 1984).

Construed liberally, Ms. Sturgis's Complaint makes absolutely no allegation or even any mention whatsoever of an injury-causing District custom or policy. Furthermore, the decision at issue was a single occurrence in which the school board was not involved, and therefore not a policy or custom as those terms are interpreted by the judiciary. <u>See</u> generally <u>Bennett v. City of Slidell</u>, 728 F.2d 762, 768 n.3 (5th Cir. 1984), <u>cert. denied</u>, 472 U.S. 1016 (1985). "Isolated violations are not the persistent, often repeated constant violations that constitute custom and policy" as required for section 1983 liability.[5]

Additionally, even if Ms. Sturgis could establish that Defendants' actions constituted and/or stemmed from an official policy or custom, Ms. Sturgis's Section 1983 claims would still fail because she is unable to show that Defendants violated her federal rights. As such, for the

---

[5]   <u>See, e.g.</u>, <u>Berry v. McLemore</u>, 670 F.2d 30, 32 (5th Cir. 1982) (single, improper arrest is not the kind of systematic, municipally supported abuse that constitutes custom); <u>Lopez v. City of Austin</u>, 710 F.2d 196, 198 (5th Cir. 1983) (failure to promote and grant merit increase to person who had filed grievance against his employer was an isolated act, not part of a custom denying merit increases to those who file EEOC complaints).

reasons set forth above, Ms. Sturgis is unable to prove a "violation of constitutional rights whose moving force is the policy or custom," which is a required in order to establish a school district's liability under Section 1983. <u>Hampton</u>, 543 F.3d at 227. Ms. Sturgis therefore fails to state a claim upon which relief may be granted under her Section 1983 claims against Defendants, and Ms. Sturgis's section 1983 claims must be dismissed.

D.   **Ms. Sturgis's Section 1983 Claims Against Superintendent Rickey Clopton and Principal Ronald Greer, Asserted Against Them Only in Their Official Capacities, are Duplicative and Must Be Dismissed.**

A local governmental unit such as a school district, is not liable under Section 1983 based on the theory of <u>respondeat superior</u>. <u>Hampton</u>, 543 F.3d at 226. Instead, "[a]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." <u>Kentucky v. Graham</u>, 437 U.S. 159, 166 (1985) (the real party in interest is the government entity, not the named official). Because the claims against Clopton and Greer in their "official" capacities are actually claims against the District, and Ms. Sturgis asserts her Fourteenth Amendment claim against both the individuals and the District, Ms. Sturgis's "official capacity" suits duplicate those asserted against the District. Thus, Greer's and Clopton's presence in this action in their "official" capacities is unnecessary and they should be dismissed. <u>Graham</u>, 473 U.S. at 167 n.14.

E.   **Ms. Sturgis Cannot Maintain a Cause of Action under Title IX Because She Has Failed to Allege a Legally Cognizable Discriminatory Act.**

Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 <u>et seq.</u> provides in pertinent part: "No person…shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). Congress enacted Title IX in 1972 with two principal objectives in mind: "[T]o avoid the use of federal resources to support discriminatory practices" and "to provide individual citizens effective protection against those

practices." <u>Gebser v. Lago Vista Ind. Sch. Dist.</u>, 524 U.S. 274, 286, 118 S.Ct. 1989, 1997 (U.S. 1998).

There is no need in the instant case to delve into a Title IX analysis, because "the standard for analyzing Title IX claims presupposes that there has been an act of discrimination." <u>Youngblood</u>, Ex. 2, p. 5.   As found by the judge in <u>Youngblood</u> when faced with identical facts and claims, and as explained in more detail in section A. above, there has been no discriminatory act, and therefore the District cannot be liable under Title IX.   There is absolutely no showing that Ms. Sturgis was placed at a disadvantage to male students because she was required to wear a drape rather than a tuxedo.  The required attire did not place the male students in a position of superiority over the female students.  The treatment of males and females was not unequal.  This was not a situation where the male students could wear whatever they wanted and the female students were required to wear certain clothing.   Specific attire was designated for male and female students alike.

Ms. Youngblood's Title IX claims were similarly unavailing in her case.   As United States District Judge Bucklew summed up:

> **Senior portraits do not constitute nor affect a fundamental right such as education or equal access to public benefits.  Again, [Ms. Sturgis] was not denied access to attend classes or to obtain equal opportunity to education. ... The court finds this matter does not constitute gender discrimination and does not reach the magnitude of a constitutional right.**

<u>Youngblood,</u> Ex. 2, pp. 9-10 (emphasis added).  Ms. Sturgis's Title IX claims fail for the same reasons.

## III.   <u>CONCLUSION</u>

For the reasons cited herein, Defendants respectfully request that this Court grant their Motion to Dismiss pursuant to Rule 12(b)(6) dismissing plaintiff's suit in its entirety.

RESPECTFULLY SUBMITTED this the 1st day of October, 2010.

**COPIAH COUNTY SCHOOL DISTRICT,
RICKEY CLOPTON AND RONALD GREER**

By:/s/ R. Jarrad Garner
*One of Their Attorneys*

OF COUNSEL:
James A. Keith (MSB # 3546)
R. Jarrad Garner (MSB # 99584)
Laura F. Rose (MSB # 102256)
Adams and Reese LLP
111 East Capitol St., Ste. 350 (39201)
P. O. Box 24297
Jackson, MS  39225-4297
Phone: (601) 353-3234
Facsimile: (601) 355-9708
jim.keith@arlaw.com
jarrad.garner@arlaw.com
laura.rose@arlaw.com

## CERTIFICATE OF SERVICE

I, R. Jarrad Garner, one of the attorneys for Defendants, do hereby certify that I have this day filed the foregoing via the ECF electronic filing system, which sent notice to counsel of record:

Bear Atwood, Esq.
Acting Legal Director
American Civil Liberties Union of Mississippi
P.O. Box 2242
Jackson, Mississippi 39225
bearatwood@aclu-ms.org

Christine P. Sun, Esq.
American Civil Liberties Union Foundation
125 Broad Street, 18th Floor
New York, New York 10004
csun@aclu.org

Alysson Mills, Esq.
Fishman Haygood Phelps Walmsley Willis & Swanson, LLP
201 St. Charles Avenue, Suite 4600
New Orleans, Louisiana 70170
amills@fishmanhaygood.com

Dated:  October 1, 2010.

s/ R. Jarrad Garner
R. Jarrad Garner