# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF MISSISSIPPI
# JACKSON DIVISION

| | |
|---|---|
| **CEARA LYNN STURGIS,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**COPIAH COUNTY SCHOOL DISTRICT; RICKEY CLOPTON, the Superintendent of Copiah County School District; and RONALD GREER, the Principal of Wesson Attendance Center,**<br><br>**Defendants.** | **CIVIL ACTION NO.: 3:10-cv-455** |

# PLAINTIFF'S MEMORANDUM OF LAW
# IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ......................................................................................... 1

BACKGROUND ................................................................................................................ 2

ARGUMENT ..................................................................................................................... 5

I.      CEARA HAS PLEADED FACTS SUFFICIENT TO ESTABLISH SHE
        SUFFERED SEX DISCRIMINATION IN VIOLATION OF TITLE IX
        AND THE EQUAL PROTECTION CLAUSE ............................................................. 5

        A.      The Amended Complaint Supports a Reasonable Inference of
                Sex Discrimination Based on Sex Stereotyping ...................................... 7

        B.      The Amended Complaint Supports a Reasonable Inference of Sex
                Discrimination Based on the District's Different Treatment of Male
                and Female Students ............................................................................... 11

        C.      The Principal Authority Relied Upon by the District is
                Not Binding on this Court and was Incorrectly Decided ..................... 14

II.     CEARA HAS SUFFICIENTLY PLED A POLICY THAT
        CAUSED HER INJURY FOR SECTION 1983 LIABILITY ......................................... 17

CONCLUSION ................................................................................................................. 19

TABLE OF AUTHORITIES

## CASES

*Alexander v. Brookhaven Sch. District*,
  No. 3:07CV640, 2010 WL 3614153 (S.D. Miss. Sept. 8, 2010) ...................................18 n.11

*Ashcroft v. Iqbal*,
  129 S.Ct. 1937 (2009)...............................................................................................................5

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)..................................................................................................................5

*Bolton v. City of Dallas*,
  541 F.3d 545 (5th Cir. 2008) ..................................................................................................18

*Brady v. Fort Bend Co.*,
  145 F.3d 691 (5th Cir. 1998) .............................................................................................17, 18

*Califano v. Goldfarb*,
  430 U.S. 199 (1977).................................................................................................................7

*Califano v. Westcott*,
  443 U.S. 76 (1979)...................................................................................................................7

*Canady v. Bossier Parish Sch. Bd.*,
  240 F.3d 437 (5th Cir. 2001) ..................................................................................................13

*Carroll v. Talman Fed. Sav. & Loan Ass'n of Chic.*,
  604 F.2d 1028 (7th Cir. 1979) ..............................................................................................9 n.4

*Cohen v. Brown Univ.*,
  101 F.3d 155 (1st Cir. 1996)....................................................................................................9

*Craig v. Boren*,
  429 U.S. 190 (1976).................................................................................................................10

*Davis v. Monroe Cnty. Bd. of Educ.*,
  526 U.S. 629 (1999)............................................................................................................12 n.6

*Doe v. Yunits*,
  No. 001060A, 2000 WL 33162199 (Mass. Super. Ct. Oct. 11, 2000),
  *aff'd*, No. 2000-J-638, 2000 WL 33342399 (Mass. App. Ct. Nov. 30, 2000)..................15 n.9

*E.E.O.C. v. Sage Realty Corp.*,
  507 F.Supp. 599 (S.D.N.Y. 1981) ..........................................................................................12

KL3 2801681.1

*Ferrara v. Hendry Cnty. Sch. Bd.*,
  362 So.2d 371 (Fla. Dist. Ct. App. 1978) ...............................................................15

*Ferrell v. Dallas Indep. Sch. Dist.*,
  392 F.2d 697 (5th Cir. 1968) ................................................................................15

*Gamblin v. Mississippi Farm Bureau Mut. Ins. Co.*,
  No. 3:07CV698 HTW-LRA, 2010 WL 1780221 (S.D. Miss. Apr. 30, 2010)....................4 n.2

*Granger v. Slade*,
  361 F.Supp. 2d 588 (S.D. Miss. 2005)......................................................................19

*Harper v. Edgewood Bd. of Educ.*,
  655 F.Supp. 1353 ((S.D. Ohio 1987) .......................................................................15

*J.E.B. v. Alabama ex. rel. T.B.*,
  511 U.S. 127 (1994)................................................................................................8

*Jackson v. Lowndes Cnty. Sch. Dist.*,
  No. 1:08-CV-178-SA-JAD, 2010 WL 91245 (N.D. Miss. Jan. 6, 2010) ......................18 n.12

*Jones v. Greninger*,
  188 F.3d 322 (5th Cir. 1999) .................................................................................5

*Karr v. Schmidt*,
  460 F.2d 609 (5th Cir. 1972) ..........................................................................10, 15

*Laffey v. Northwest Airlines, Inc.*,
  366 F.Supp. 763 (D.D.C. 1973) *aff'd in part,
  vacated and remanded in part on other grounds*, 567 F.2d 429 (D.C. Cir. 1976) .................12

*Littlefield v. Forney Indep., Sch. Dist.*,
  268 F.3d 275 (5th Cir. 2001) .................................................................................13

*Logan v. Gary Community Sch. Corp.*,
  No. 2:07-CV-431 JVB, 2008 WL 4411518 (N.D. Ind. Sept. 25, 2008) ..................................16

*Lormand v. US Unwired, Inc.*,
  565 F.3d 228 (5th Cir. 2009) ...............................................................................4 n.2

*Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*,
  369 F.3d 464 (5th Cir. 2004) .................................................................................5

*Milam v. City of San Antonio*,
  113 F. App'x 622 (5th Cir. 2004) ..........................................................................19

KL3 2801681.1

*Mississippi Univ. for Women v. Hogan*,
    458 U.S. 718 (1982).................................................................................................7

*Monell v. Dep't of Social Servs. of N.Y.*,
    436 U.S. 658 (1978)...............................................................................................19

*Montgomery v. Indep. Sch. Dist. No. 709*,
    109 F.Supp. 2d 1081 (D. Minn. 2000).....................................................................9

*Moore v. Willis Ind. Sch. Dist.*,
    233 F.3d 871 (5th Cir. 2000) .................................................................................19

*Nevada Dep't of Human Res. v. Hibbs*,
    538 U.S. 721 (2003), *aff'd*, F. App'x 648 (9th Cir. 2005)........................................8

*Pederson v. Louisiana State Univ.*,
    213 F.3d 858 (5th Cir. 2000) ...................................................................................9

*Price Waterhouse v. Hopkins*,
    490 U.S. 228 (1989), *aff'd*, 920 F.2d 967 (D.C. Cir. 1990) ...........................8, 9, 10

*Reed v. Rhodes*,
    455 F.Supp. 569 (N.D. Ohio 1978)........................................................................17

*Test Masters Educ. Servs., Inc. v. Singh*,
    428 F.3d 559 (5th Cir. 2005) ...................................................................................5

*Theno v. Tonganoxie Unified Sch. District No. 464*,
    377 F.Supp. 2d 952 (D. Kan. 2005).........................................................................9

*United States v. Virginia*,
    518 U.S. 515 (1996)..................................................................................................7

*Ward v. Texas Emp't Comm'n*,
    No. H-81-2845, 1986 WL 12575 (S.D. Tex. Nov. 6, 1986),
    *aff'd*, 823 F.2d 907 (5th Cir. 1987) ................................................................12 n.7

*Weinberger v. Wiesenfeld*,
    420 U.S. 636 (1975)............................................................................................7, 10

*Youngblood v. Sch. Bd. of Hillsborough Co., Fl.*,
    No. 8:02-cv-01089-SCB (M.D. Fl. Sept. 24, 2002).........................................14, 15

# STATUTES

7 C.F.R. § 15 ....................................................................................................6

20 U.S.C. § 1681.............................................................................................2, 6

42 U.S.C. § 1983 ........................................................................................ *passim*

42 U.S.C. § 2000d-4a(2) ..............................................................................6 n.3

34 C.F.R. § 106.31 ...........................................................................................14

Miss. Code Ann. § 37-7-301(q) (2010) ...........................................................18

Miss. Code Ann. § 37-7-301.1 (2010) .............................................................18

Title IX Educ. Amendments (1972).......................................................... *passim*

# RULES

Fed. R. Civ. P. 12.............................................................................................5

# MISCELLANEOUS

Letter dated October 26, 2010 from Assistant Secretary for Civil Rights,
    *available at* http://www2.ed.gov/about/offices/list/ocr/letters/colleague-201010.pdf ......10 n.5

*Revised Sexual Harassment Guidance: Sexual Harassment of Students by School
    Employees, Other Students, or Third Parties*, (Jan. 19, 2001),
    *available at* http://www2.ed.gov/about/offices/list/ocr/docs/shguide.html#_ednref16.......9, 10

U.S. Dep't of Ed., Instit. of Ed. Sci., *Fast Facts*, 2009,
    *available at* http://nces.ed.gov/fastfacts/display.asp?id=27 ...........................................16 n.10

Plaintiff Ceara Sturgis ("Ceara" or "Plaintiff") respectfully submits this memorandum of law in opposition to the motion to dismiss filed by Defendants Copiah County School District (the "District"), Rickey Clopton, the Superintendent of Copiah County School District, and Ronald Greer, the Principal of Wesson Attendance Center ("Wesson").[1]

## PRELIMINARY STATEMENT

Like most high school seniors approaching their graduation, Ceara looked forward to receiving her yearbook, which is a lasting memento of one's years in high school. Receiving a senior yearbook is a rite of passage and seeing one's own portrait alongside friends' and classmates' portraits is an important aspect of that rite. But Ceara was denied that experience because of sex discrimination in violation of federal law and her constitutional rights.

The District requires senior girls to wear an exposing scoop-necked cloth drape for their senior portraits, but allows boys to wear the formal attire of a tuxedo. Ceara, who throughout her years at Wesson dressed in conventionally "masculine" attire, desired to wear a tuxedo for her portrait. The photographer took her picture in the tuxedo, and then prepared the proof to be published in the yearbook. But without any explanation other than "tuxedos for boys, drapes for girls," Wesson's principal, and later the District and School Board, refused to allow Ceara's portrait taken in a tuxedo to appear alongside her classmates.

The allegations in the complaint adequately state a claim that the District excluded Ceara's yearbook photo because she did not conform to its conception of "femininity" and thus based its decision on sex stereotyping, which is an actionable form of sex discrimination. Courts have long deemed it unlawful to require women and girls to conform to traditional notions of

---

[1] Pursuant to their counsel's representation that Messrs. Clopton and Greer will be available for deposition and will participate in all appropriate discovery, Plaintiff has offered to enter into a stipulation dismissing Messrs. Clopton and Greer as Defendants in their official capacities.

KL3 2801681.1

what is considered gender-appropriate appearance or demeanor.  Such stereotyping is actionable under both Title IX of the Educational Amendments of 1972, 20 U.S.C. § 1681 *et seq.* ("Title IX"), and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, and courts faced with policies like the District's here regularly have struck them down as discriminatory.

The pleaded facts are also enough to show that the District's policy constitutes sex discrimination because of its different treatment of male and female students, deeming the same clothes appropriate for boys but not for girls.  By requiring girls to wear the cloth drape, which necessarily exposes their necklines and upper chests, the District's policy is demeaning to female students such as Ceara, who do not wish to appear in non-modest clothing in their official portraits.  These allegations also state a claim that the District engaged in unlawful sex discrimination.

For these and other reasons set forth below, Plaintiff respectfully submits that the District's motion to dismiss the complaint should be denied in its entirety and the case should proceed to discovery.

## BACKGROUND

Ceara graduated in 2010 from Wesson, where she had attended school from kindergarten through twelfth grade.  (Amended Complaint ("Compl.") ¶ 14).  As a student, Ceara was well-liked, well-respected, and studious.  She participated in extracurricular activities, including band, the soccer team, the basketball team, and the Students Against Destructive Decisions club.  (*Id.*)  Ceara also maintained an approximately 3.9 grade point average, and was a member of the National Honor Society.  (*Id.*)

From ninth grade until her graduation, Ceara consistently wore conventionally

"masculine" clothing.  (*Id.* ¶ 17).  Ceara wears such clothing in all aspects of her life, including at school, at home, and at social events.  (*Id.* ¶ 15).  She also wears short hair in a style popular among teenage boys.  (*Id.*)  Although Ceara identifies as female, she is deeply uncomfortable in traditionally "feminine" clothes.  (*Id.*).  Ceara does not recall a time prior to the events alleged in the Amended Complaint when her clothing caused any conflict with her classmates or school officials.  Nor did her manner of dress violate the Wesson dress code, which has no gender-based requirements.  (*Id.* ¶¶ 18-19).

In the summer of 2009, Ceara sought to have her photo taken for her senior yearbook portrait.  (*Id.* ¶ 20).  As with many high school students, Ceara looked forward to cherishing her senior yearbook as a meaningful keepsake with which to remember and capture all of her experiences from high school.  (*Id.*)  She hoped it would be a commemoration she could share with future generations of family and friends.  (*Id.*)

Ceara had been informed that all Wesson students were required to wear formal clothing in their senior portraits, and that male students were permitted to wear tuxedos but not female students.  (*Id.* ¶ 21)  When Ceara sat for her photo, she tried on a scoop-necked drape that all female students were required to wear, but it brought her to tears.  (*Id.*)  She felt deeply uncomfortable and embarrassed to be seen in such traditionally "feminine" attire.  (*Id.*).  Ceara then tried on a tuxedo at the photo session.  (*Id.* ¶ 22).  She was immediately relieved and the photographer took a photo of Ceara in the tuxedo.  (*Id.*)

On or about the first day of Ceara's senior year, her mother asked Wesson's Principal, Ronald Greer, whether Ceara's portrait would be allowed to appear in the yearbook.  (*Id.* ¶ 23).  Greer told her mother no, and stated "Tuxedos for boys, drapes for girls."  (*Id.*)  Her mother then asked Assistant Superintendent Robert Holloway whether Ceara's photo could be included in the

- 3 -

yearbook.  Holloway said that he did not see any reason why Ceara's portrait could not be included since there was no rule prohibiting her from wearing the clothes she wore for her portrait.  (*Id.* ¶ 24).  Ceara's mother subsequently went to the photography studio to provide the proof number of the photo of Ceara in a tuxedo which Ceara had selected for the yearbook.  (*Id.* ¶ 25).

The day that the yearbook photos were due in school, an employee from the District called Ceara's mother and told her that the District had spoken with its lawyers and would not allow Ceara's photo in the yearbook.  (*Id.* ¶ 26).  Ceara's mother visited the school to urge Principal Greer to reconsider the decision, but he refused.  (*Id.* ¶ 26).

By letter dated October 13, 2009, Ceara and her mother, through counsel, submitted a written request to the District, Superintendent Clopton and Principal Greer, that they allow the portrait of Ceara in a tuxedo to be published in the school yearbook.  (*Id.* ¶ 27).  By letter dated October 16, 2010, the District, through counsel, denied Ceara's request.  (*Id.*).  Specifically, the District stated that the refusal to allow Ceara to wear a tuxedo for her senior portrait reflected "[t]he position of the School Board." (Letter dated Oct. 16, 2009 from Olen C. Bryan, Jr. as Counsel for Copiah County School District, attached as Exhibit A).[2]  In the spring of 2010, when Ceara received her copy of the 2010 Wesson yearbook, she saw that neither her name nor her photo appeared in the senior portrait section.  (*Id.* ¶ 28).

On August 16, 2010, Ceara filed a Complaint against Defendants, alleging violations of

---

[2] It is proper for the Court to consider the content of this letter in deciding the District's motion to dismiss because "[i]n addition to accepting all of the factual allegations in the complaint as true, courts must consider the complaint in its entirety, as well as other sources . . . in particular, *documents incorporated into the complaint by reference* . . . ."  *Lormand v. US Unwired, Inc.* 565 F.3d 228, 251 (5th Cir. 2009) (emphasis added).  *See also Gamblin v. Mississippi Farm Bureau Mut. Ins. Co.*, No. 3:07CV698HTW-LRA, 2010 WL 1780221, at *2 (S.D. Miss. Apr. 30, 2010) (documents incorporated by reference in pleading may be considered in deciding motion to dismiss).

Title IX and the Equal Protection Clause pursuant to 42 U.S.C. § 1983 ("Section 1983").  On

August 20, 2010, Ceara filed an Amended Complaint.  On October 1, 2010, Defendants moved

to dismiss Ceara's Amended Complaint.

## ARGUMENT

Motions made pursuant to Federal Rule of Civil Procedure 12(b)(6) "are viewed with

disfavor and are rarely granted."  *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 570 (5th

Cir. 2005).  In considering a motion under Rule 12(b)(6), the "court accepts 'all well-pleaded

facts as true, viewing them in the light most favorable to the plaintiff.'"  *Martin K. Eby Constr.*

*Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004) (quoting *Jones v.*

*Greninger*, 188 F.3d 322, 324 (5th Cir. 1999)).  To overcome a Rule 12(b)(6) motion, a plaintiff

must plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 570 (2007).  "Factual allegations must be enough to raise a right to

relief above the speculative level, . . . on the assumption that all the allegations in the complaint

are true (even if doubtful in fact)."  *Id*. at 555 (citations and footnote omitted).  "A claim has

facial plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*,

129 S. Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 556).  Under these standards, it is

clear that Ceara's Amended Complaint should not be dismissed.

I.     **CEARA HAS PLEADED FACTS SUFFICIENT TO ESTABLISH**
       **SHE SUFFERED SEX DISCRIMINATION IN VIOLATION OF**
       **TITLE IX AND THE EQUAL PROTECTION CLAUSE**

The Amended Complaint alleges that Ceara was subjected to impermissible sex

discrimination as a predicate both to her causes of action under Title IX (Compl. ¶¶ 34-35), and

the Equal Protection Clause, brought pursuant to Section 1983 (Compl. ¶ 39).  Most of the

District's motion to dismiss is grounded in the argument — based on inapposite case law and one

non-binding District Court decision from Florida that was wrongly decided — that Ceara has not alleged any actionable discrimination.  The District contends in its brief ("Def. Br.") that its policy of allowing boys to wear traditional tuxedos for their yearbook portraits while requiring girls to wear an outfit consisting of a scoop-necked drape "was not discriminatory," and that Ceara's  Equal Protection claim is precluded because she cannot prove that any "constitutional right has been violated."  (Def. Br. at 3-5).  Likewise, the District maintains that because "there has been no discriminatory act . . . the District cannot be liable under Title IX."  (Def. Br. at 15).

As set forth more fully below, the facts as alleged in the Amended Complaint are sufficient to draw the reasonable inference that Ceara suffered actionable sex discrimination, based on sex stereotyping and a sex-based classification, establishing the predicate to Ceara's statutory and constitutional claims.  The District's motion to dismiss Ceara's Title IX claim is defeated by her pleading of facts sufficient to establish such discrimination, since by definition that statute provides "no person . . . shall, *on the basis of sex* be *excluded from participation* in, be *denied the benefits* of, be subjected to *discrimination* under any education program or activity receiving Federal financial assistance."  20 U.S.C. § 1681(a) (emphases added).  *See also* 7 C.F.R. § 15a.31(b)(5) (prohibiting "discriminat[ion] against any person in the application of any rules of appearance"); 7 C.F.R. § 15a.31(b)(4) ("[s]ubject[ing] any person to separate or different rules of behavior, sanctions, or other treatment").[3]

Likewise, by adequately pleading that she was discriminated against based on sex, Ceara states a valid cause of action under Section 1983 for violation of the Equal Protection Clause,

---

[3] The District receives Federal financial assistance, including but not limited to funds from the U.S. Department of Education and the U.S. Department of Agriculture (Compl. ¶ 32), thus requiring that it comply with the regulations promulgated by those agencies implementing Title IX, including 7 C.F.R. § 15 *et seq.*  The Civil Rights Restoration Act further mandates that once a school accepts federal funding, the entire school system must be in compliance with Title IX, not just the particular program or activity that received the funding.  42 U.S.C. § 2000d-4a.

and the District's motion to dismiss this claim should be denied.  In order to show that its sex-based discriminatory yearbook policy does not run afoul of the Equal Protection Clause, the District will be required to demonstrate "an exceedingly persuasive justification." *See*, *e.g*., *United States v. Virginia*, 518 U.S. 515, 531 (1996).  The Amended Complaint adequately alleges that the District cannot meet this burden, especially since Ceara participated in numerous other extracurricular activities while dressed in "masculine" clothing without causing any conflict with her classmates or school officials.  (Compl. ¶¶ 16-17).

A.      **The Amended Complaint Supports a Reasonable Inference of Sex Discrimination Based on Sex Stereotyping**

The District's policy requires female students to conform to stereotypes about what is appropriate dress for the female gender in order to have their portrait printed in the yearbook, and thereby constitutes sex discrimination as evidenced by sex stereotyping.

The United States Supreme Court has long held that policies and practices based on sex stereotypes are discriminatory and constitute unlawful sex discrimination.  *See Weinberger v. Wiesenfeld* 420 U.S. 636, 653 n.20 (1975) (striking down policy basing public benefits on gender stereotype that only husbands are "breadwinners"); *Califano v. Goldfarb*, 430 U.S. 199, 207 (1977) (invalidating part of Social Security Act and noting presumptions of female dependency are more consistent with "the role-typing society has long imposed than with contemporary reality"); *Califano v. Westcott*, 443 U.S. 76, 89 (1979) (invalidating public benefits law based on "the baggage of sexual stereotypes that presumes the father has the primary responsibility to provide a home and its essentials, while the mother is the center of home and family life") (internal quotations omitted); *Mississippi Univ. for Women v. Hogan*, 458 U.S. 718 (1982) (striking down as violative of Equal Protection Clause admissions policies of state-run nursing school that refused to admit men on ground that such policy perpetuates "the stereotyped view of

nursing as an exclusively woman's job"); *J.E.B. v. Alabama ex. rel. T.B.*, 511 U.S. 127, 135 (1994) (concluding that gender classification was contrary to Equal Protection Clause, and stating that "government policies that professedly are based on reasonable considerations in fact may be reflective of 'archaic and overbroad' generalizations about gender"); *Nevada Dep't of Human Res. v. Hibbs*, 538 U.S. 721, 730 (2003) (reaffirming general and longstanding disapproval of laws and policies based on invidious gender stereotypes, including those that portray women as unfit for professional life).

    *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989), is the paradigm case for this established legal principle.  Ann Hopkins, a female associate, alleged that Price Waterhouse discriminated against her on the basis of sex when it denied her a promotion to partnership for failure to conform to gender stereotypes.  The Supreme Court found she had a viable claim of sex discrimination because sex stereotyping had been a motivating factor in Price Waterhouse's actions.  The unlawful role of sex stereotyping was evidenced by comments made by the partner who communicated to Hopkins the rationale for the firm's decision to deny her promotion.  He explained that, in order to improve her chances for partnership, Hopkins should "walk more femininely, talk more femininely, dress more femininely, wear make-up, have her hair styled, and wear jewelry." *Id.* at 235.  Simply put, Hopkins could not enjoy the benefit of a promotion because she did not exhibit "femininity" as preferred and expected by her employer.

    The parallels to *Price Waterhouse* here are striking. The District's yearbook policy — requiring girls to wear a cloth drape that causes them to look as though they are wearing a scoop-necked dress — reflects and reinforces its preferred and expected notions of "femininity."  The harm to girls such as Ceara who do not conform to this stereotypical view — exclusion from the important social ritual of appearing in their yearbooks — evokes the harm Hopkins suffered

when she was told she had to "walk more femininely, talk more femininely, dress more femininely, wear make-up, have her hair styled, and wear jewelry" in order to advance in her job. *Id*. at 235.[4]

Sex discrimination that is based on sex stereotyping is no more permissible in schools than in the workplace.  For example, the Fifth Circuit Court of Appeals found a Title IX violation where an educational institution's decision was based on "paternalism and stereotypical assumptions about [women's] interests and abilities."  *Pederson v. Louisiana State Univ.*, 213 F.3d 858, 880 (5th Cir. 2000).  In that case, a university violated Title IX for failing to provide equal funding to its men's and women's athletic programs.  *Id.*  The Circuit upheld the district court's conclusion that the inequality in funding was based on a "remarkably outdated view of women and athletics," and that it therefore violated Title IX.  *Id.*  By the same token, the District's yearbook policy is based on an "outdated" and "stereotypical" view about how women should and must present themselves and what they should wear.  *See also Cohen v. Brown Univ.*, 101 F.3d 155, 179 (1st Cir. 1996) ("Title IX was enacted in order to remedy discrimination that results from stereotyped notions of women's interests and abilities"); *Theno v. Tonganoxie Unified Sch. Dist. No. 464*, 377 F. Supp. 2d 952, 965 (D. Kan. 2005) (concluding that student could state cognizable claim under Title IX by asserting that he suffered harassment because he failed to meet masculine stereotypes); *Montgomery v. Indep. Sch. Dist. No. 709*, 109 F. Supp. 2d 1081, 1092 (D. Minn. 2000) (concluding that student can state cognizable claim under Title IX by asserting that "he suffered harassment due to his failure to meet masculine stereotypes"); Revised Sexual Harassment Guidance: Sexual Harassment of Students by School Employees,

---

[4] That some or many female students may have enjoyed their appearance in the drape does not defeat Ceara's sex discrimination claim.  *See Carroll v. Talman Fed. Sav. & Loan Ass'n of Chi.*, 604 F.2d 1028, 1031 n.8 (7th Cir. 1979) (holding that fact that many female employees enjoyed wearing gender-mandated uniform was no defense for employer's discriminatory policy).

Other Students, or Third Parties (Jan. 19, 2001), *available at* http://www2.ed.gov/about/offices/ list/ocr/docs/shguide.html#_ednref16 (providing that "gender-based harassment, which may include acts of verbal, nonverbal, or physical aggression, intimidation, or hostility based on sex or sex-stereotyping, but not involving conduct of a sexual nature, is also a form of sex discrimination to which a school must respond") (citing *Price Waterhouse*, 490 U.S. at 251).[5]

In arguing that Ceara has not sufficiently pled a discriminatory act entitling her to a remedy under Title IX or the Equal Protection Clause, the District relies heavily on *Karr v. Schmidt*, 460 F.2d 609 (5th Cir. 1972), which it characterizes as standing for and reinforcing "precedent allowing schools to set and enforce dress codes and related regulations."  (Def. Br. at 5).  *Karr* is entirely inapposite here.  First, *Karr* did not involve *any* claim of sex discrimination, much less one based on evidence of sex stereotyping.  The Equal Protection challenge to hair-length at issue was based on the school's discrimination against *males* with long hair versus *males* with short hair.  Second, *Karr* was decided years before the United States Supreme Court first endorsed the concept of sex stereotyping as a form of sex discrimination in 1975, *Weinberger*, 420 U.S. 636  — and well over a decade before the Court's seminal *Price Waterhouse* decision in 1989.  *See supra* pp. 8-9.  Third, *Karr* was decided even before the United States Supreme Court first determined that classifications based on sex are subjected to heightened constitutional scrutiny.  *Craig v. Boren*, 429 U.S. 190, 197 (1976).  Thus, even had *Karr* involved a sex discrimination Equal Protection Claim, the rational basis test it employed is no longer good law.

---

[5] The Office for Civil Rights of the Department of Education recently reiterated in a letter to all public school districts that "it can be sex discrimination if students are harassed either for exhibiting what is perceived as a stereotypical characteristic for their sex, or for failing to conform to *stereotypical notions of masculinity and femininity*."  Letter dated October 26, 2010 from Assistant Secretary for Civil Rights, at pp. 7-8 (emphasis added), *available at* http://www2.ed.gov/about/offices/list/ocr/letters/colleague-201010.pdf.

Ceara has sufficiently pled facts to support the reasonable inference that, by requiring girls to wear an exposing scoop-neck cloth drape that comports with the District's notion of "femininity," the policy at issue reinforces the stereotype that the only appropriate formal wear for women is a "feminine" dress, as opposed to a tuxedo or pants.  It also reinforces a stereotypical image of girls as potentially less serious and more sexualized than boys.  When school officials exclude or deny benefits to girls who do not conform to gender stereotypes from school activities, they ratify and reinforce outdated views of the relative qualities of men and women.  The District inflicted harm on Ceara by sending her the message that her "masculine" appearance was so unacceptable that she was literally not fit to appear alongside her fellow classmates' official photos in the yearbook.  Such discrimination is actionable under Title IX and Section 1983.

> **B.     The Amended Complaint Supports a Reasonable Inference of Sex Discrimination Based on the District's Different Treatment of Male and Female Students**

In addition to sufficiently pleading sex discrimination on the basis of sex stereotyping, the Amended Complaint pleads enough facts to draw the reasonable inference that Ceara suffered sex discrimination based on the District's different treatment of male and female students.  As alleged by Ceara, the District's policy permits male students to wear a tuxedo, while female students are required to wear an outfit consisting of a scoop-necked cloth drape, frequently worn off the shoulder, which is undesirable for any female who does not want to wear revealing or non-modest clothing in a contemporary social setting.  The District could have imposed a single uniform requirement for all students, regardless of gender, such as wearing a graduation gown over their clothing.  It did not, and sex-based classification constitutes sex discrimination.

Imposing a clothing requirement on females that does not apply to male students can

constitute invidious sex discrimination sufficient to state a claim under Title IX and other

pertinent statutory schemes, particularly where, as here with the exposing drape required for

girls, the mandated outfit is one that can be perceived as sexualizing. *See E.E.O.C. v. Sage*

*Realty Corp.*, 507 F. Supp. 599, 607-608 (S.D.N.Y. 1981) (finding sex discrimination where

female lobby attendant was terminated for refusing to wear provocative uniform); *Laffey v.*

*Northwest Airlines, Inc.*, 366 F. Supp. 763, 789-90 (D.D.C. 1973) (finding sex discrimination

where only female flight attendants required to wear contact lenses instead of glasses), *aff'd in*

*part, vacated and remanded in part on other grounds*, 567 F.2d 429 (D.C. Cir. 1976).[6]  The

District's requirement that girls wear a revealing, scoop-necked cloth drape even though boys

may wear a tuxedo is no different than the policies found to be discriminatory in these cases.

The policy sends the unmistakable message that in order to be acceptable in formal setting,

females must wear non-modest clothing, in contrast to their male counterparts.  At minimum, the

question of whether the cloth drape constitutes attire that is sexualizing or suggestive in a

contemporary setting is a fact issue that is inappropriate to decide on a motion to dismiss.

Accordingly, Ceara has pled sufficient facts to support her claims of discrimination on the basis

of sex.[7]

---

[6] While these cases were decided under the federal statute barring sex discrimination in employment, Title VII of the Civil Rights Act of 1964, they are equally relevant to discrimination claims under Title IX.  *See*, *e.g.*, *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 651 (1999) (noting that what constitutes sex-based discrimination under Title VII informs what constitutes sex-based discrimination under Title IX).

[7] This same sex based discrimination properly forms the basis of both Ceara's Title IX and Section 1983 claims.  *Cf. Ward v. Texas Employment Comm'n*, No. H-81-2845, 1986 WL 12575, at *3 (S.D. Tex. Nov. 6, 1986) (holding that jury's verdict on Section 1983 claim should also be entered as to Title VII claim; "[t]he same right, to be free of intentional sex discrimination in employment, is claimed to have been infringed by the same wrong, that discrimination.  The primary right and duty asserted and the primary wrong complained of are the same in each action."), *aff'd*, 823 F.2d 907 (5th Cir. 1987).

The District wrongly contends that "[t]he judiciary should not be involved in evaluating whether a particular dress code or grooming regulation satisfies the Constitution" as a matter of law because "the Fifth Circuit has determined that these matters should be resolved by local school authorities."  (Def. Br. at 8-9).  First, it is not at all clear that a dress code is the equivalent of a grooming regulation, as the District assumes.  For example, in *Canady v. Bossier Parish Sch. Bd.*, 240 F.3d 437 (5th Cir. 2001), the Fifth Circuit distinguished hair length regulations from situations like that here, in which a suggestive clothing requirement is imposed exclusively on female students.  The *Canady* court disagreed that "clothing and hair length were essentially the same for purposes of constitutional protection," explaining that "[w]hile a person's choice of clothing may be predicated solely on considerations of style and comfort, an individual's choice of attire also may be endowed with sufficient levels of intentional expression" to warrant constitutional protection.  *Id.* at 440.[8]  Second, if the District were correct that "local school authorities" have sole jurisdiction over "evaluating whether a particular dress code or grooming regulation satisfies the Constitution," the Fifth Circuit would not have reviewed the dress code at issue in *Canady* to determine whether it satisfied the contours of the Constitution.  *See also Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 284-86 (5th Cir. 2001) (rejecting interpretation of *Karr* urged by the District as precluding challenges to school dress codes and following *Canady* in holding that students may challenge school dress codes as unconstitutional). The subject matter of this action is appropriately brought before this Court to remedy violations of Ceara's constitutional and statutory rights to be free from discrimination.

The District further incorrectly argues that the impact on students of the  discriminatory yearbook policy is *de minimis* compared to the hair length regulations upheld in *Karr*.  (Def. Br.

---

[8]  While *Canady* analyzed a First Amendment claim, the case nonetheless affirms that school dress codes are not exempt from constitutional scrutiny.

KL3 2801681.1

at 7).  To the contrary, a yearbook photo establishes a permanent, public record of recognized

personal and symbolic importance in our culture.  For many, their senior high school yearbook

portrait is an important historical marker of who one was as a young adult.  Typically, it is a

photograph that is shared with one's spouse and one's children and grandchildren, as well as

other family and friends.  It is irrelevant that after Ceara "completed her portrait sitting, she

could have easily removed the drape and returned to wearing her preferred clothing."  (Def. Br.

at 7).  The point is that being forced to be photographed in the drape would have created an

indelible indignity in her yearbook portrait.

Finally, the District's argument that its policy is not discriminatory because it did not

"preclude[] [Ceara] from attending class or continuing her education" (Def. Br. at 7) is beside the

point.  Title IX prohibits sex discrimination in extracurricular activities and school-sponsored

programs.  *See*, *e.g.*, 34 C.F.R. § 106.31 ("no person shall, on the basis of sex, be excluded from

participation in, be denied the benefits of, or be subjected to discrimination under any academic,

*extracurricular . . .* or *other educational program or activity*") (emphasis added).  The District

cites no authority to support its proposition that schools may freely discriminate on the basis of

sex in extracurricular or other school-sponsored activities, nor does any such authority exist.  A

school need not prevent a student from attending classes to run afoul of these statutory

protections, much less the Equal Protection Clause.

### C. The Principal Authority Relied Upon by the District is Not Binding on this Court and was Incorrectly Decided

The District's motion to dismiss is premised nearly entirely on *Youngblood v. Sch. Bd. of

Hillsborough Cnty., Fl.*, No. 8:02-cv-01089-SCB (M.D. Fl. Sept. 24, 2002), an unpublished

decision from another jurisdiction issued over eight years ago.  The *Youngblood* decision is not

only nonbinding on this Court, it also was wrongly decided.

The District Court in *Youngblood* relied on the very cases upholding the permissibility of hair-length regulations as neutral grooming standards invoked by the District here, in particular the Fifth Circuit's decision in *Karr*. But as explained above, *Karr* did not concern sex discrimination at all, much less on the basis of sex stereotyping, and was decided prior to the Supreme Court's decisions in *Price Waterhouse* and *Craig v. Boren*. *See supra* p. 10. Further, the reasoning of *Karr* and its progeny has been called into question with respect to dress codes by subsequent case law. *See supra* p. 13. Moreover, *Karr* was not decided on a motion to dismiss, but rather only after the plaintiff was given an opportunity to conduct discovery and present evidence before the case was decided. 460 F.2d at 611 (decided after a four-day trial on the merits). The same is true for the other cases improperly relied upon in *Youngblood* and by the District here. *See Ferrell v. Dallas Indep. Sch. Dist.*, 392 F.2d 697, 698 (5th Cir. 1968) (decided following "full and complete hearing on the matter"); *Ferrara v. Hendry Cnty. Sch. Bd.*, 362 So.2d 371 (Fla. Dist. Ct. App. 1978) (decided after hearing); *Harper v. Edgewood Bd. of Educ.*, 655 F. Supp. 1353 (S.D. Ohio 1987) (decided on motion for summary judgment after parties had opportunity to conduct discovery and provide expert testimony).[9] It would be improper for Ceara to be denied the opportunity to adduce evidence in support of her allegations

---

[9] The District discusses the *Harper* case at length in its brief (at 10-11). Its reliance on this decision is as misplaced as the District Court's was in *Youngblood*. In *Harper*, school officials prevented two students dressed in clothing of the opposite gender from attending the prom, which they sought to do as a prank. The court held that the school's action was permissible because it fostered community values and maintained discipline. In contrast, Ceara's unwillingness to wear a drape is not a prank and she did not seek to engage in rebellious acts in order to violate community norms. Rather, she sought to dress for her photo consistent with the manner she routinely dressed for school. (Compl. ¶¶ 15-17). These facts render *Harper* inapposite. *See, e.g.*, *Doe v. Yunits*, No. 001060A, 2000 WL 33162199, at *6 (Mass. Super. Ct. Oct. 11, 2000) (distinguishing *Harper* from case where plaintiff "is not merely engaging in rebellious acts to demonstrate a willingness to violate community norms; plaintiff is expressing her personal identity, which cannot be suppressed by the school merely because it departs from community standards."), *aff'd*, No. 2000-J-638, 2000 WL 33342399 (Mass. App. Ct. Nov. 30, 2000).

that the District's actions amounted to sex discrimination based on sex stereotyping and a sex-based classification.  *Id.*; *see also Logan v. Gary Community Sch. Corp.*, No. 2:07-CV-431 JVB, 2008 WL 4411518, at *4 (N.D. Ind. Sept. 25, 2008) (denying motion to dismiss student's challenge to prom dress code under Title IX on ground that "the issue requires further development, and it would be premature to dismiss this claim at this early state in the case.").

The *Youngblood* court also erred when it concluded that the defendants' policy requiring girls to wear feminine uniforms in their yearbooks photos was "too trivial" to be reviewed by a federal court, thereby avoiding any analysis of whether such a policy was discriminatory.  To the contrary, this subject matter is important and worthy of federal court attention.  Indeed, the kind of sex stereotyping that the school imposes on girls here is indistinguishable from that at the heart of the violation in *Price Waterhouse*, which the U.S. Supreme Court concluded fell squarely within its jurisdiction.  The *Price Waterhouse* Court could have dismissed Hopkins' claim as an insignificant dispute about what clothing she would wear, whether she would apply makeup, or how she would walk.  Instead, it recognized that imposition of even seemingly "trivial" sex-based requirements lies at the core of sex discrimination.  Similarly, the *Youngblood* court erred in dismissing the plaintiff's claim as too "trivial" to implicate sex discrimination protection.

Moreover, the fact that the central dispute here concerns a yearbook photo makes the controversy not one that is beneath the federal courts, but one that resonates with almost all Americans.  Yearbooks are part of American life, a rite of passage for students completing high school and entering adulthood.[10]  For many students, a senior yearbook portrait is the first time

---

[10] According to statistics compiled by the United States Department of Education, Institute of Education Sciences, and published online, in 2009 "89 percent of 25- to 29-year-olds had received at least a high school diploma or equivalency certificate," and country's "high school

their image ever appears in a book, and for many others, it will be the only time that happens in their entire lives.  That image will represent the person as he or she graduates from high school, but its significance does not diminish over the following years.  People frequently re-visit their yearbook photos to show to future generations of family and friends or to privately reminisce.  In short, yearbook photos play a culturally important role in our society.  They provide tangible evidence of attending and completing high school, one of the most important educational achievements in many people's lives, and federal courts should not shirk from ensuring that they are covered by antidiscrimination laws.  *E.g., Reed v. Rhodes*, 455 F. Supp. 569, 600 (N.D. Ohio 1978) (ordering desegregation of extracurricular activities, including "the class yearbook" and observing, "[b]ecause of their importance as a measure of peer achievement, these activities sometimes broadcast more clearly than other school efforts how seriously the school officials take the mandate to eliminate segregation 'root and branch.' Unless all parties understand the importance of these activities to students, it is unlikely that the necessary steps will be taken to guarantee that they are free of discriminatory effect or affect.").

## II. CEARA HAS SUFFICIENTLY PLED A POLICY THAT CAUSED HER INJURY FOR SECTION 1983 LIABILITY

The District's argument that Ceara failed to adequately plead a violation of Section 1983 lacks merit.  In order to plead a violation of her constitutional rights, a plaintiff may show "that a single action by a municipal official possessing final policymaking authority regarding the action in question constitutes the official policy of the municipality." *Brady v. Fort Bend Co.,* 145 F.3d 691, 698 (5th Cir. 1998).  The District argues that Ceara:  (1) failed to point to any figure with final policymaking authority to discriminate against her, and (2) failed to allege that the

completion rate . . . has remained between 85 and 89 percent since the late 1970s." *Available at* http://nces.ed.gov/fastfacts/display.asp?id=27.

discriminatory policy was a policy or custom.  (Def. Br. at 12-13).  It is wrong on both counts.

The question of who is a policymaker is determined by state and local law.  *Bolton v. City of Dallas*, 541 F.3d 545, 548 (5th Cir. 2008).  In Mississippi, a school board has the power to govern its affairs and make decisions with respect to school activities.  *See* Miss. Code Ann. §§ 37-7-301(q) & 301.1 (2010).  Ceara adequately pled that the District violated her constitutional rights not only through the actions of its Superintendent and Wesson's Principal, but also directly by the School Board.  As stated in the Amended Complaint (¶¶ 23, 26), after Principal Greer twice denied Ceara's requests to have her photo in a tuxedo included in the yearbook, Ceara and her mother appealed the decision to the District.  The District and the School Board, by counsel, refused the request, stating by letter dated October 16, 2010, that "[t]he *position of the School Board* is pretty well summed up by the Order of the Court rendered in the case of *Youngblood*. . . ." (Exhibit A, attached) (emphasis added).[11]  In light of the allegations in the Amended Complaint, which incorporates by reference the District's admission in this letter (*see supra* p. 4), Ceara has adequately pled that the deprivation of her constitutional rights occurred because of the actions of an official policymaker, *i.e.*, the School Board for the District.  *See, e.g., Brady v. Fort Bend Cty.*, 145 F.3d 691 (5th Cir. 1998).[12]

---

[11] This case is different than *Alexander v. Brookhaven Sch. Dist.*, No. 3:07CV640, 2010 WL 3614153 (S.D. Miss. Sept. 8, 2010), which held that a plaintiff failed to state a valid claim under Section 1983 because she could have, but did not, adequately appeal the termination decision of a superintendent of schools to the school board, thereby denying the board an opportunity to meaningfully overturn the decision.  Under those facts, this Court determined that the superintendent "was not vested with final policymaking authority."  *Id.* at *2.  In contrast, the District has admitted that the School Board deliberately refused to publish Ceara's photo even after considering the arguments raised by Ceara's counsel in her demand letter.

[12]     In light of reported Section 1983 actions cases naming as defendants Mississippi school districts, but not their boards, *e.g. Jackson v. Lowndes Cnty. Sch. Dist.*, No. 1:08-CV-178-SA-JAD, 2010 WL 91245 (N.D. Miss. Jan. 6, 2010), the District is properly named as a sole defendant.  If the Court determines that the School Board should also be named as a party, Ceara respectfully requests leave to amend the Complaint for that purpose.

- 18 -

Moreover, the District's denial of Ceara's request to appear in the senior portrait section of her yearbook in a tuxedo was an unconstitutional act carried out pursuant to the School Board's official custom or policy.  In the Fifth Circuit, "[a] local government entity, such as a school district, may be held liable under § 1983 for constitutional violations committed pursuant to a governmental policy or custom," *Moore v. Willis Indep. Sch. Dist.*, 233 F.3d 871, 874 (5th Cir. 2000) (citing *Monell v. Dep't of Soc. Servs. of N.Y.,* 436 U.S. 658 (1978)), and liability may be imposed "for single episodes of conduct that are not part of any pattern of illegality," *Milam v. City of San Antonio*, 113 F. App'x 622, 626 (5th Cir. 2004).  For example, a defendant can be "liable for single instances of conduct perpetrated by the policymakers themselves; such one-time conduct can represent official 'policy' even though it does not necessarily form part of a plan or rule developed to govern all like occasions." *Id*. at 626.  *See also Granger v. Slade*, 361 F. Supp. 2d 588, 598 (S.D. Miss. 2005) (citing *Milam* for proposition that single event can constitute official custom or practice for liability under Section 1983).

In this case, the District deprived Ceara of her right to equal treatment under the law when it required her to wear the cloth drape in order to have her senior portrait published in the yearbook.  That singular action is more than enough to constitute a policy or custom under the case law.

<u>**CONCLUSION**</u>

For the foregoing reasons, Ceara respectfully requests that the Court deny the District's motion to dismiss her complaint.


DATED: November 1, 2010                    RESPECTFULLY SUBMITTED,

                                           /s Bear Atwood
                                           Bear Atwood (MS Bar # 103234)
                                           Acting Legal Director

American Civil Liberties Union of Mississippi
P.O. Box 2242
Jackson, MS 39225
(601) 354-3408
Fax: (601) 355-6465
bearatwood@aclu-ms.org

Alysson L. Mills (MS Bar # 102861)
Fishman Haygood Phelps
   Walmsley Willis & Swanson, L.L.P.
201 St. Charles Avenue, Suite 4600
New Orleans, Louisiana  70170
(504) 586-5252
Fax: (504) 586-5250
amills@fishmanhaygood.com

Christine P. Sun*
American Civil Liberties Union Foundation
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2500
Fax: (212) 549-2650
csun@aclu.org

Norman C. Simon*
Joshua Glick*
Jason Moff*
Kramer Levin Naftalis & Frankel LLP
1177 Avenue of the Americas
New York, NY 10036
(212) 715-9100
(Fax): (212) 715-8000
nsimon@kramerlevin.com
jglick@kramerlevin.com
jmoff@kramerlevin.com

Attorneys for Plaintiff
* Admitted *pro hac vice*

KL3 2801681.1

## <u>CERTIFICATE OF SERVICE</u>

I, Alysson L. Mills, an attorney for Plaintiff, certify that this day I have caused a true and correct copy of the foregoing Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss to be delivered by this Court's CM/ECF system to:

> James A. Keith (MS Bar # 3546)
> R. Jarrad Garner (MS Bar # 99584)
> Laura F. Rose (MS Bar # 102256)
> Adams and Reese LLP
> 111 East Capitol Street, Suite 350
> Jackson, MS 39201
> Phone: 601.353.3234
> Fax: 601.355.9708
> *Attorneys for Defendants*

DATED: November 1, 2010          <u>/s Alysson Mills</u>

                                 Alysson L. Mills (MS Bar # 102861)

KL3 2801681.1