IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

**CEARA LYNN STURGIS**                                                                 **PLAINTIFF**

VS.                                                              CIVIL ACTION NO. 3:10cv455-DPJ-FKB

**COPIAH COUNTY SCHOOL DISTRICT;**
**RICKEY CLOPTON, the Superintendent of**
**Copiah County School District; and RONALD**
**GREER, the Principal of Wesson Attendance Center**                  **DEFENDANTS**

## REPLY TO OPPOSITION TO
## DEFENDANTS' RULE 12(B)(6) MOTION TO DISMISS

Defendant Copiah County School District ("the District")[1] files this brief reply to address significant misstatements of fact and law made by Ms. Sturgis and/or her counsel in her Opposition to Defendants' Rule 12(b)(6) Motion.

I.  **MS. STURGIS APPEARS IN HER SENIOR YEARBOOK MORE THAN 26 TIMES, INCLUDING IN A TUXEDO, AND A BIKINI.**

A review of the 2009-2010 Wesson Attendance Center yearbook reveals that not only does Ms. Sturgis appear in it, but she appears in it repeatedly—in more than 26 photos. Importantly, many of the photos in which Ms. Sturgis appears are inarguably fatal to her claims, including:

- Four pictures of her in a bikini at the Senior Party. (Exh. "A").[2]

- Seventeen pictures of her on her own Ceara Sturgis page, including in a tuxedo and several with her wearing a neck tie. (Exh. "B").

---

[1] Individual Defendants Rickey Clopton and Ronald Greer were voluntarily dismissed in their official capacities by Ms. Sturgis by means of Stipulation dated and filed November 2, 1010. [Doc. 22].

[2] The District recognizes that its attachment of the referenced exhibits may (or may not) convert this Rule 12(b)(6) motion to one requiring analysis under Rule 56 summary judgment standards. If so, the District asserts that it is entitled to summary dismissal of Ms. Sturgis' claims under those standards since there exist no genuine issues of material fact that might allow Ms. Sturgis' claims to survive summary judgment scrutiny.

- Three pictures of her on the soccer page, where she appears as a Co-Captain. (Exh. "C").

- Two pictures of her on the Band and Color Guard page, where she appears as President of the Band Council. (Exh. "D").

Ms. Sturgis' counsel so studiously avoids revealing these truths and, indeed, represents affirmatively and repeatedly to the contrary -- insisting that Ms. Sturgis only dresses in a masculine fashion, and was deprived of inclusion in her senior yearbook -- that one questions whether sanctions are not in order for lack of candor with this Court.

## II.   THE DRAPE IS NOT REVEALING; A BIKINI IS.

In her Opposition Brief ("Brief"), Ms. Sturgis exaggerates the alleged offensiveness of the drape, and does so in a most self-serving and disingenuous manner. Foremost, the descriptions of the drape provided in the Brief are conspicuously inconsistent with the description given in Ms. Sturgis' First Amended Complaint. There, she originally described it as a **"curtain-like garment that causes the female students to look as if they are wearing a dress or blouse."** (FAC ¶ 3, emphasis added). In an obvious effort to enhance her attempt to make the drape look like sex discrimination when it is not, Ms. Sturgis now goes way beyond the allegations of her lawsuit in which she objected **only** to having to wear "clothing traditionally associated with the female gender," and expressed her aversion to "dresses" or other "feminine clothing." (FAC ¶¶ 15, 35). She now claims the drape "necessarily exposes their necklines and upper chests," and "is frequently worn off the shoulder." (Brief p. 2). Instead of the "curtain-like garment" described in the lawsuit, she now claims that the drape is "suggestive," "revealing," "non-modest" and "demeaning to female students." (Brief p. 2, 12). Although she made no such reference in her First Amended Complaint, she now complains that the drape "also reinforces a stereotypical image of girls as potentially less serious and more sexualized than boys." (Brief pp. 11,12). These blatant inconsistencies should not be lost on the Court.

Moreover, the "new" description of the drape is simply inaccurate, as can be seen by the

pages of Ms. Sturgis' senior yearbook. (Exh. "E"). The drape is indeed "curtain like" and is worn draped at varying heights, according to the preference of the girl. Regardless, there is no need for this Court to analyze whether the drape is "sexualizing" or "revealing" when it is now known that, contrary to numerous assertions that she wears exclusively masculine clothes, in fact Ms. Sturgis chose to wear a bikini to a school function—the Senior Party. Indeed, it is hard to conceive of an item of clothing more sexualizing and feminine than a bikini. Yet, even in the face of these undisputed facts, Ms. Sturgis' First Amended Complaint and Brief have stated repeatedly that "at school and at home, Ceara wears clothing that is traditionally associated with the male gender (FAC ¶ 2); she "feels deeply uncomfortable in clothing such as dresses, blouses, and skirts that are traditionally associated with the female gender" (FAC ¶¶ 2, 15); "by choice, Ceara consistently does not wear dresses or other 'feminine clothing'" (FAC ¶ 15); and that "from ninth grade until her graduation, Ceara consistently wore conventionally 'masculine' clothing." (Brief p. 2-3). As proven by Exhibit "A," this is simply not true, and underscores the insincerity of all of Ms. Sturgis' claims.

### III. THE DRESS CODE FOR SENIOR PORTRAITS IS MANDATORY FOR BOYS AND GIRLS. "TUXES FOR BOYS, DRAPES FOR GIRLS," WITHOUT EXCEPTION.

Ms. Sturgis' counsel plays semantic games in stating that the District "requires" senior girls to wear the drape for senior portraits, but "allows" boys to wear the formal attire of a tuxedo. At best, this is a patently misleading statement since the boys are *required* to wear the tuxedo. As Ms. Sturgis plead in her First Amended Complaint, "Tuxes for boys, drapes for girls." (FAC ¶ 23). Ms. Sturgis is right that the school imposed a clothing requirement on females that does not apply to male students. (Brief p. 11) She fails to note, however, that the opposite is true as well: it imposed a clothing requirement on male students that does not apply to females. As such, there is no option for either gender and, consequently, there clearly exists no discriminatory conduct in violation of Title IX "and other pertinent statutory schemes."

**It is well established that simply setting different standards for different genders**

**does not constitute discrimination.** Even in the employment arena (though this senior yearbook portrait issue most assuredly is not akin to an employment case inasmuch as no constitutional right is implicated here, as is discussed in further detail below), courts have consistently affirmed an employer's right to regulate grooming of both sexes given the unique gender differences and cultural norms of what is considered attractive.[3] In all cases, the courts have affirmed an employer's right to dictate gender-specific grooming standards which do not deprive either sex of employment opportunities and are even-handedly applied to both sexes. "Title VII [was] enacted to stop the perpetuation of sexist or chauvinistic attitudes in employment which significantly affect employment opportunities. Title VII [was] not meant to prohibit employers from instituting personal grooming codes which have a *de minimis* effect on employment." *Pecenka v. Fareway Stores, Inc.*, 672 N.W. 2d 800 (2003 Iowa Sup.)(not discrimination where employer allowed women to wear earrings but not men.)

What is not permitted is to set rules for one gender and not for another. Importantly, that did not happen here. *See Craft v. Metromedia*, 766 F.2d 1205, 1211 (8th Cir. 1985). In *Craft*, no sex stereotyping discrimination was found where both male and female on-air personnel were required to maintain professional, businesslike appearances and the standards were enforced in an evenhanded manner. "While there may have been some emphasis on the feminine stereotype of 'softness' and bows and ruffles and on the fashionableness of female anchors… these criteria do not implicate the primary thrust of Title VII, which is to prompt employers to "discard outmoded sex stereotypes posing distinct employment disadvantages for one sex." *See also Carroll v. Talman*, 604 F.2d 1028 (7th Cir. 1979) (cannot require only women to wear uniforms); *O'Donnell v. Burlington Coat Factory*, 656 F. Supp. 263 (S.D. Ohio, Feb. 24, 1987)(requiring only women to wear uniforms is facially discriminatory).

---

[3] For males, it has often involved hair length, facial hair, and jewelry. *See Willingham v. Macon Tel. Publ'g Co.*, 507 F.2d 1084, 1092 (5th Cir. 1975)(grooming code requiring short hair on males but allowing long hair on females not discriminatory); *Kleinsorge v. Eyeland Corp.*, 2000 U.S. Dist. LEXIS 812 (E.D. Pa. Jan. 31, 2000) (okay to fire male employee because he would not remove earring where policy allowed women to wear earrings but not men) For females, litigation has revolved around dress, weight, and make-up.

### IV. MS. STURGIS CONFUSES A 'RITE' WITH A 'RIGHT.'

While Ms. Sturgis passionately pleads (and grossly overstates) the importance of appearing on the portrait page of her senior yearbook in the attire of her choosing, no amount of hyperbole regarding this alleged *"rite of passage"* changes the fact that this is simply **not** a *constitutionally protected right*. Her efforts to draw certain analogies notwithstanding, this Court should refuse to make the quantum leap, as Ms. Sturgis would require, to equate this alleged deprivation with the employment wrongs suffered by Ms. Hopkins in the seminal *Price Waterhouse* case, or any other Title VII case, for that matter.[4] Ms. Sturgis' counsel argues:

> The harm to girls such as Ceara who do not conform to this stereotypical view— exclusion from the important social ritual of appearing in their yearbooks— evokes the harm Hopkins suffered when she was told she had to 'walk more femininely, talk more femininely, dress more femininely, wear make-up, have her hair styled, and wear jewelry' in order to advance in her job.

(Brief p. 8-9, citing *Price Waterhouse* at 235). Again, this Court should note the complete falsity of the assertion that Ms. Sturgis was "excluded from the important social ritual of appearing in [her] yearbook." (Exhs. "A"-"D"). Nevertheless, and even assuming that one accepts the melodramatic significance given to a senior yearbook as contained in Ms. Sturgis' Brief, the fact remains she appears at least 26 times therein (and always in the attire of her own choosing!).

More importantly, though, it is an affront to the battles that continue to be fought by women to be treated equally in the workplace to suggest that exclusion of Ms. Sturgis from the senior portrait page because she would not wear the drape "evokes the harm Hopkins suffered" when denied partnership at Price Waterhouse.[5] Ms. Sturgis' counsel writes "Indeed, the kind of

---

[4] *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989).

[5] Completely *unlike* Ms. Hopkins, Ms. Sturgis tacitly acknowledges that there was no invidious or systemic practice of sex stereotyping at Wesson Attendance Center. In her First Amended Complaint and in her Brief, Ms. Sturgis acknowledges her extensive and full participation in after school activities at Wesson, her excellent academic performance and her total integration in the school. She admits that she wore conventionally "masculine" clothing, and that it never caused any conflict with her classmates or school officials. (FAC ¶¶ 16, 17; Brief pp. 2-3, 6). Her experience belies any comparison to Ms. Hopkins, and further defeats her Title IX claim ("No person…shall, on the basis of sex be excluded from participation in, be denied the benefits of, be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 USC 1681(a).)

sex stereotyping that the school imposes on girls here is indistinguishable from that at the heart of the violation in *Price Waterhouse*." (Brief p. 16). Surely, this shocking assertion must be as insincere as Ms. Sturgis' claims to have worn solely masculine attire, as well as her assertion that she was deprived inclusion in her senior yearbook.

Regardless, the law, fortunately, takes a more rational, mature approach in defining what constitutes a constitutionally protected right. Since all of the relevant authorities on this subject clearly hold that she has no constitutional right to be included on the senior portrait page of the yearbook in a tuxedo, and indeed she has not cited to a single case holding to the contrary, Ms. Sturgis dismisses the real precedent as "inapposite case law and one non-binding District Court decision from Florida that was wrongly decided."[6] She argues that *Karr v. Schmidt*, 460 F.2d 609 (5th Cir. 1972) was decided years before the United States Supreme Court first endorsed the concept of sex stereotyping as a form of sex discrimination and before other important decisions related to classifications based on sex, including *Price Waterhouse*. She therefore concludes "thus, even had *Karr* involved a sex discrimination equal protection claim the rational basis test it employed is no longer good law."

This is simply wrong. *Karr* and its progeny remain compelling precedent and there is guiding, if not binding, precedent following these early school decisions, including *Youngblood*, which was correctly decided in 2002 and is still good law today. When she sued over her omission from the yearbook for declining to drape for her senior portrait, Ms. Youngblood made identical efforts to compare her experience to Title VII gender stereotyping employment discrimination, or alternatively, to a Title IX deprivation of educational opportunities or equal access to public benefits. Judge Bucklew soundly and accurately rejected any Title VII or Title IX analogies:

> Plaintiff also alleges that females being required to wear a drape for senior pictures is gender discrimination protected by the Constitution. Plaintiff cites to

---

[6] *Youngblood v. Sch. Bd. of Hillsborough County, Florida,* United States District Court, Middle District of Florida, Tampa Division, Case No. 8:02-cv-01089-SCB

many cases in support of her argument that the courts have long held that policies and practices that constrain women within gender stereotypes, or that punish men or women for their failure to conform to gender stereotypes, are unlawful. **The cases cited by Plaintiff, however, are easily distinguishable in that they either fall under the purview of Title VII sex discrimination, which admittedly has as its goal to strike at the disparate treatment of men and women in the context of employment, or they involve gender-based policies that affected fundamental rights such as education or equal access to public benefits.**

**<u>Despite Plaintiff's effort to somehow tie senior portraits into the adult world of employment opportunities, senior portraits are not related to the treatment of men and women in an employment context, and they do not constitute nor affect a fundamental right such as education or equal access to public benefits. Again, Plaintiff was not denied an opportunity to attend classes or to obtain equal opportunity to education.</u>**

*Youngblood* p. 8-9 (emphasis added).

The other cases cited to by Ms. Sturgis relative to sex stereotypes are also easily distinguishable.[7] Here again, her efforts to liken her experience to the important issues addressed in the cases to which she cites are somewhere between embarrassing and offensive, or both. To remark on just a few:

- *Califano v. Westcott*, 443 U.S. 76, 89 (1979) held unconstitutional Section 407 of the Social Security Act, which governs the Aid to Families with Dependent Children, Unemployed Father (AFDC-UF) program, which provided benefits to families whose dependent children had been deprived of parental support because of the unemployment of the father, but did not provide such benefits when the mother became unemployed.

- *Califano v. Goldfarb*, 430 U.S. 199, 207 (1977) held unconstitutional a Social Security Act survivors' benefits based on the earnings of a deceased husband covered by the Act as payable to his widow regardless of dependency, but under 42 U.S.C. § 402(f)(1)(D), such benefits on the basis of the earnings of a deceased wife covered by the Act were payable to her widower only if he was receiving at least half of his support from her. The different treatment of men and women mandated by § 402 (f)(1)(D) was found to constitute invidious discrimination against female wage earners by affording them less protection for their surviving spouses than is provided to male employees.

- *J.E.B. v. Alabama ex. Rel. T.B.*, 511 U.S. 127, 135 (1994), held that the Equal

---

[7] In a total red herring, she also cites to recent guidance regarding sex harassment based on stereotypical characteristics, but never pleads she was the victim of such harassment.

>    Protection Clause prohibits discrimination in jury selection on the basis of gender, or on the assumption that an individual will be biased in a particular case solely because that person happens to be a woman or a man.

Finally, the remaining cases to which Ms. Sturgis cites in a vain attempt to take this senior yearbook portrait page issue out of the realm of a mundane grooming requirement or the like, and to give it constitutional protections, are unavailing.  For example, *Canady v. Bossier Parish Sch. Bd.*, 240 F.3d 437 (5th Cir. 2001) cited to by Ms. Sturgis, has no application here, and in fact supports the District's position.  In *Canady*, parents sued a school board claiming that requiring uniforms violated their childrens' First Amendment rights to free speech, failed to account for religious preferences, and denied their children's liberty interest to wear clothing of their choice in violation of the Fourteenth Amendment.  **<u>The courts found in favor of the School Board.</u>**

>    While certain forms of expressive conduct and speech are sheltered under the First Amendment, constitutional protection is not absolute, especially in the public school setting. Educators have an essential role in regulating school affairs and establishing appropriate standards of conduct. See *Bethel School Dist. No. 403 v. Fraser*, 478 U.S. 675, 681 (1986). …**School boards, not federal courts, have the authority to decide what constitutes appropriate behavior and dress in public schools.**

*Id.* at 441 (emphasis added).  Importantly, Ms. Sturgis presents no free speech or freedom of religion claims in her lawsuit.  In addition, contrary to the suggestion in Ms. Sturgis' brief, *Canady* involved no gender-based uniform requirements, no sexual stereotyping, no gender issues whatsoever.

Similarly, *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 287 (5th Cir. 2001), cited by Ms. Sturgis, while again brought on entirely different legal bases than Ms. Sturgis' lawsuit -- freedom of speech and religion -- **<u>was also decided in favor of enforcing the school district's uniform policy.</u>**  "As has been well recognized, federal courts should defer to school boards to decide, within constitutional bounds, what constitutes appropriate behavior and dress in public schools." See *Canady*, 240 F.3d at 441, 444 ("[I]t is not the job of federal courts to determine

the most effective way to educate our nation's youth.").

Additionally, while Ms. Sturgis emphasizes the permanent public record of a yearbook in trying to get around the fact that the imposition of the drape was so fleeting, both *Canady* and *Littlefield* support the argument made by the District in its original 12(b)(6) memorandum that the one-time donning of a drape is *de minimis* when compared to the hair length regulations upheld in *Karr,* and even the uniform requirements of *Canady* and *Littlefield*:

> Although students are restricted from wearing clothing of their choice at school, students remain free to wear what they want after school hours. Students may still express their views through other mediums during the school day. The uniform requirement does not bar the important "personal intercommunication among students" necessary to an effective educational process.

*Littlefield,* at 287. Ms. Sturgis was even less restricted: by her own admission, she was allowed to wear the attire of her choice at all times at school, with the sole exception being that the drape was required to appear in the senior portrait section of the yearbook. It is hard to imagine a more *de minimis* restriction on a student.

## CONCLUSION

By all accounts, Ms. Sturgis appears to be an exceptional young woman with a bright future. A leader among seniors, accomplished academically, in soccer, in band, she apparently has the support of her peers, her family, and her school. Her high school yearbook is replete with happy photographic memories of a well spent high school career. Despite her lawyers' best efforts to demonstrate to the contrary, both factually and legally she is clearly not the victim of any actionable gender discrimination.

Copiah County School District closes with words of wisdom from the Fifth Circuit guiding when courts should, and should not, intervene in school affairs:

> Federal courts, and particularly those in this circuit, have unflinchingly intervened in the management of local school affairs where fundamental liberties, such as the right to equal education, required vindication. At times that intervention has, of necessity, been on a massive scale. **But in the grey areas where fundamental rights are not implicated, we think the wiser course is one of restraint.**

*Karr*, 460 F.2d at 616 (emphasis added).  Simply put, no fundamental rights are implicated in this case.  Because of this, and for the reasons cited herein and in its original Memorandum in Support, the District respectfully requests that this Court grant its Motion to Dismiss pursuant to Rule 12(b)(6) dismissing Ms. Sturgis' suit in its entirety.

RESPECTFULLY SUBMITTED this the 3rd day of December, 2010.

**COPIAH COUNTY SCHOOL DISTRICT**

By:/s/ R. Jarrad Garner
*One of Their Attorneys*

OF COUNSEL:
James A. Keith (MSB # 3546)
R. Jarrad Garner (MSB # 99584)
Laura F. Rose (MSB # 102256)
Adams and Reese LLP
111 East Capitol St., Ste. 350 (39201)
P. O. Box 24297
Jackson, MS  39225-4297
Phone: (601) 353-3234
Facsimile: (601) 355-9708
jim.keith@arlaw.com
jarrad.garner@arlaw.com
laura.rose@arlaw.com

## **CERTIFICATE OF SERVICE**

I, R. Jarrad Garner, one of the attorneys for Defendant Copiah County School District, do hereby certify that I have this day filed the foregoing via the ECF electronic filing system, which sent notice to counsel of record:

Bear Atwood, Esq.
Acting Legal Director
American Civil Liberties Union of Mississippi
P.O. Box 2242
Jackson, Mississippi 39225
bearatwood@aclu-ms.org

Christine P. Sun, Esq.
American Civil Liberties Union Foundation
125 Broad Street, 18th Floor
New York, New York 10004
csun@aclu.org

Alysson Mills, Esq.
Fishman Haygood Phelps Walmsley Willis & Swanson, LLP
201 St. Charles Avenue, Suite 4600
New Orleans, Louisiana 70170
amills@fishmanhaygood.com

Norman C. Simon, Esq.
Joshua Glick, Esq.
Jason Moff, Esq.
Kramer Levin Naftalis & Frankel LLP
1177 Avenue of the Americas
New York, New York 10036
nsimon@kramerlevin.com
jglick@kramerlevin.com
jmoff@kramerlevin.com

Dated: December 3, 2010.

                                    s/ R. Jarrad Garner
                                    R. Jarrad Garner