UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

| | |
|---|---|
| **CEARA LYNN STURGIS,** <br><br> **Plaintiff,** <br><br> v. <br><br> **COPIAH COUNTY SCHOOL DISTRICT; RICKEY CLOPTON, the Superintendent of Copiah County School District; and RONALD GREER, the Principal of Wesson Attendance Center,** <br><br> **Defendants.** | **CIVIL ACTION NO.: 3:10-cv-455** |

**PLAINTIFF'S SUR-REPLY MEMORANDUM OF LAW**
**IN FURTHER OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

## INTRODUCTION

Defendant Copiah County School District ("the District") makes the serious accusations in its Reply Brief ("Reply Br.") that Plaintiff Ceara Sturgis ("Ceara") and her counsel made "significant misstatements of fact and law" in her Opposition Brief ("Opp. Br.") such that "one questions whether sanctions are not in order for lack of candor with this Court," and that "all of [her] claims" are "insincer[e.]" (Reply Br. at 1-3). These inflammatory charges are completely false. Ceara and her counsel respectfully request permission to file this sur-reply brief in response to the District's baseless attacks on their integrity and the *bona fides* of Ceara's claims.[1]

## ARGUMENT

The District makes five accusations of misconduct, none of which has merit.

*First*, the District falsely asserts that although "Ceara appears in [the yearbook] repeatedly," her counsel "represents affirmatively and repeatedly" that she was "deprived of inclusion in her senior yearbook." (Reply Br. at 1-2). The Amended Complaint ("Compl.") makes clear, however, that Ceara's injury stems from the District's exclusion of her photograph *in the senior portrait section of the yearbook*. (*See, e.g.*, Compl. ¶ 28 ("Neither [Plaintiff's] name nor her photo appeared in the yearbook's senior portrait section.")). The pleadings do not allege that she did not appear at all in the yearbook. Similarly, her Opposition Brief repeatedly explains that her claim is predicated on the exclusion of her senior portrait:

- "[S]eeing one's own *portrait* alongside friends' and classmates' *portraits* is an important aspect of [the yearbook] rite. But Ceara

---

[1] The District provided an advance copy of its Reply Brief prior to filing in order to afford Ceara an opportunity to dismiss the Amended Complaint. Ceara and her counsel maintain that the claims set forth in the pleadings have merit and rejected that offer.

- was denied that experience . . . ." (Opp. Br. at 1) (emphasis added);

- The District "refused to allow Ceara's *portrait* taken in a tuxedo to appear alongside her classmates" (*Id*.) (emphasis added);

- Plaintiff "saw that neither her name nor her photo appeared *in the senior portrait section*" (*Id*. at 4) (emphasis added);

- "The District inflicted harm on Ceara by sending her the message that her 'masculine' appearance was so unacceptable that she was literally not fit to appear alongside her fellow classmates' *official photos* in the yearbook." (*Id*. at 11) (emphasis added);

- "[B]eing forced to be photographed in the drape would have created an indelible indignity in her yearbook *portrait*" (*Id*. at 14) (emphasis added); and

- "[T]he district deprived Ceara of her right to equal treatment under the law when it required her to wear the cloth drape in order to have her *senior portrait* published in the yearbook" (*Id*. at 19) (emphasis added).

These statements completely belie the District's regrettable rhetoric that Ceara's counsel were not candid with the Court about the injury for which she seeks redress.

The District further suggests that other photographs of Ceara in the yearbook — the vast majority of which appeared in an advertisement purchased by Ceara's mother — ameliorate any injury flowing from the exclusion of her senior portrait. This contention improperly is made for the first time in its Reply Brief. In any event, the argument is unavailing. Whether Ceara appears elsewhere in the yearbook is irrelevant to the issue of whether her senior portrait properly was excluded, and in particular whether that decision was based on unlawful sex stereotyping.

*Second*, the District asserts that certain photographs of Ceara purportedly wearing a "bikini" contradicts her assertion that she regularly wears "masculine" clothing and thereby "underscores the insincerity of [her] claims." (Reply Br. at 3). The photographs themselves —

which were taken at the senior pool party — completely belie this accusation as they show Ceara wearing board shorts, swimwear that traditionally is worn by men.  Moreover, as the District acknowledges, the yearbook contains other pictures of Ceara wearing neckties and a tuxedo.  These photos too are consistent with her allegation that she regularly wears masculine attire — an assertion that in any event must be accepted as true on the District's motion to dismiss.  *See, e.g., Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004).[2]  Lastly, whether Ceara wore what the District deems feminine swimwear to a pool party is irrelevant to the issue here:  whether the District's insistence that female students wear drapes in their official senior portraits constitutes impermissible sex discrimination.  (*See* Opp. Br. at 1 ("[T]he District's policy is demeaning to female students such as Ceara, who do not wish to appear in non-modest clothing in their official portraits.")).  Just as it would be unlawful to require a female lawyer to wear a mini-skirt in court notwithstanding that she may wear a bikini at the beach, it is unlawful for the District to dictate to girls what it deems gender-appropriate attire in a formal setting.

>*Third*, the District criticizes supposed "blatant inconsistencies" in the description of the "drape" required to be worn by girls in their yearbook portraits that is set forth in the Amended Complaint and Opposition Brief, respectively.  (Reply Br. at 2).  Specifically, the District argues that the description in the pleadings of the "scoop-necked drape [as] a curtain-like garment that causes the female students to look as if they are wearing a dress or blouse," somehow contradicts statements in the brief that the drape "necessarily exposes [girls'] necklines and upper chests," "is frequently worn off the shoulder," and is "suggestive," "revealing," "non-modest," and "demeaning to female students."  (Reply Br. at 2).  Contrary to the District's

---

[2]   Even if this were a summary judgment motion, which it is not, these photos at a minimum demonstrate that there is a genuine factual dispute between the parties.

contention, these descriptions are entirely consistent. The separate question of whether these words accurately describe the drape, its effect and its perceived meaning is — as expressly stated in the Opposition Brief — a determination to be made by the fact-finder upon a full record, including but not limited to fact and expert testimony. (Opp. Br. at 12 ("[T]he question of whether the cloth drape constitutes appropriate attire in a contemporary setting is a fact issue that is inappropriate to decide on a motion to dismiss.")).

*Fourth*, the District contends that Ceara's "counsel plays semantic games" by arguing that "the District 'requires' senior girls to wear the drape . . . but 'allows' boys to wear" a tuxedo. (Reply Br. at 3) (emphasis added). This assertion takes statements completely out of context and misses the point. Ceara's argument did not rest on a distinction between a "requirement" for girls and a permissive standard for boys, as the District argues. Imposing different dress requirements on male and female students can amount to discriminatory conduct in violation of Title IX and the Constitution. (See Opp. Br. at Section I(B) ) The District surely would concede that requiring girls to wear a tube top for their official portrait, while requiring boys to wear a tuxedo, would amount to actionable discrimination. Here, Ceara has alleged that the scoop-necked drape requirement when contrasted with the tuxedo requirement similarly is a violation of law. While the District may disagree, Ceara is entitled to develop a factual record to prove why this differential requirement amounts to sex discrimination, as well as whether the District's policy is based on impermissible sex stereotyping.

*Finally*, the District asserts that Ceara's analogy to the sex stereotyping at issue in *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989) is "an affront to the battles that continue to be fought by women to be treated equally in the workplace" because Ceara's injury was "fleeting." (Reply Br. at 5, 9). In raising this point, the District effectively concedes that Ceara *was* required

to adhere to sex stereotypes — albeit, in the District's view, to a lesser degree than the plaintiff in *Price Waterhouse*. The question of whether the injury suffered by Ceara is more or less severe in the District's opinion than that suffered by the plaintiff in *Price Waterhouse* concerns the *extent* of injury, not *whether* injury occurred. Disagreements about the scope of damages are not proper grounds for the dismissal of a case, and are meant to be resolved by the fact-finder. *See, e.g., Bishop v. Rakestraw*, No. 3:96CV66-B-D, 1996 WL 407983, at *5 n.10 (N.D. Miss. May 20, 1996) (denying motion to dismiss and observing, "[t]he motion to dismiss for failure to state a claim raises the additional ground that the plaintiff cannot prove his entitlement to any actual damages. The court finds that this argument is not well taken. The damages issue in this cause involves questions of fact for the jury.").

## CONCLUSION

For the reasons stated in the Opposition Brief and set forth above, the District's motion to dismiss the Amended Complaint should be denied.

DATED: February 28, 2011

RESPECTFULLY SUBMITTED,

/s Bear Atwood
Bear Atwood (MS Bar # 103234)
Legal Director
American Civil Liberties Union of Mississippi
P.O. Box 2242
Jackson, MS 39225
(601) 354-3408
Fax: (601) 355-6465
bearatwood@aclu-ms.org

Alysson L. Mills (MS Bar # 102861)
Fishman Haygood Phelps
  Walmsley Willis & Swanson, L.L.P.
201 St. Charles Avenue, Suite 4600
New Orleans, Louisiana  70170
(504) 586-5252
Fax: (504) 586-5250
amills@fishmanhaygood.com

>Christine P. Sun\*
>American Civil Liberties Union Foundation
>125 Broad Street, 18th Floor
>New York, NY 10004
>(212) 549-2500
>Fax: (212) 549-2650
>csun@aclu.org
>
>Norman C. Simon\*
>Joshua Glick\*
>Jason Moff\*
>Kramer Levin Naftalis & Frankel LLP
>1177 Avenue of the Americas
>New York, NY 10036
>(212) 715-9100
>Fax: (212) 715-8000
>nsimon@kramerlevin.com
>jglick@kramerlevin.com
>jmoff@kramerlevin.com
>
>Attorneys for Plaintiff
>\* Admitted *pro hac vice*

## CERTIFICATE OF SERVICE

I, Alysson Mills, attorney for Plaintiff, certify that this day I filed the foregoing Plaintiff's Sur-Reply Memorandum of Law in Further Opposition to Defendants' Motion to Dismiss via the Court's ECF electronic filing system, which sent to notice to all counsel of record.

DATED: February 28, 2011                    /s Alysson Mills

- 6 -