UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

CEARA LYNN STURGIS                                                                                    PLAINTIFF

V.                                                                   CIVIL ACTION NO.: 3:10-CV-455-DPJ-FKB

COPIAH COUNTY SCHOOL DISTRICT                                                            DEFENDANT

ORDER

This § 1983 action is before the Court on Defendant Copiah County School District's Motion to Dismiss [13] pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiff Ceara Lynn Sturgis responded in opposition, Defendant filed its reply, and Sturgis filed her sur-reply. The Court, having considered the extensive briefing by the parties, along with the pertinent authorities, concludes that Defendant's motion should be denied at the Rule 12(b)(6) stage.

I.      Facts and Procedural History

According to her Amended Complaint, Plaintiff Ceara Lynn Sturgis graduated in 2010 from Wesson Attendance Center, which is part of the Copiah County School District. In summer 2009, Sturgis endeavored to sit for her senior yearbook portrait. The District specifies that female students will wear a drape and male students will wear a tuxedo. Sturgis—who identifies as a female but prefers conventionally masculine clothing—was uncomfortable with the drape and opted instead to wear a tuxedo for her portrait. Consequently, the District excluded Sturgis's portrait from the senior portraits section of the yearbook. Sturgis appealed to the District in writing, but it denied her request in October 2009. Aggrieved, she filed this § 1983 suit, alleging that the District engaged in sex-based discrimination in violation of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 (2006) *et seq.*, and the Equal Protection Clause of the

Fourteenth Amendment of the United States Constitution.  The District now moves to dismiss Sturgis's Amended Complaint for failure to state a claim upon which relief may be granted.

II.	Analysis

    A.	Motion to Dismiss Standard

In considering a motion under Rule 12(b)(6), the "court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'"  *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004) (quoting *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999)).  To overcome a Rule 12(b)(6) motion, Plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Id*. at 555 (citations and footnote omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, --- U.S. ----, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 556).  It follows that "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'show[n]'–'that the pleader is entitled to relief.'"  *Id*. at 1950 (quoting Fed. R. Civ. P. 8(a)(2)). "This standard 'simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of' the necessary claims or elements."  *In re S. Scrap Material Co., LLC*, 541 F.3d 584, 587 (5th Cir. 2008) (citing *Iqbal* at 1965).

B.      Equal Protection

The District generally contends that Sturgis presents neither a deprivation of a right secured by the United States Constitution nor a discriminatory act. The District further contends that no liability exists under § 1983 because Sturgis fails to allege an official policymaker or municipal policy or custom.

1.      Constitutional Questions

The District relies heavily on an unpublished district court order out of Florida, *Youngblood v. School Board of Hillsborough County, Florida*, Case No. 8:02-cv-1089-T-24MAP (M.D. Fla. Sept. 24, 2002). Considering an identical set of facts, the *Youngblood* court granted the school board's motion to dismiss, finding that no constitutionally protected right was involved and there had been no discriminatory act. *Id.* at 5. The court primarily relied on the Fifth Circuit Court of Appeals' opinion in *Karr v. Schmidt*, a case dealing with a public school's hair-length regulations. 460 F.2d 609 (5th Cir. 1972). In *Karr*, the court explained that grooming regulations are subject to a minimal standard of judicial review, specifically, "whether the regulation is reasonably intended to accomplish a constitutionally permissible state objective." 460 F.2d at 616.

The applicable level of scrutiny is central to this and all equal-protection cases. "Under the equal protection clause, strict scrutiny applies to classifications that infringe on a fundamental right (such as the right to free speech and expression) or involve a protected classification." *A.M. ex rel. McAllum v. Cash*, 585 F.3d 214, 226 (5th Cir. 2009) (citation omitted). If, however, the regulation discriminates against a quasi-suspect classification—like sex—then the Court applies intermediate scrutiny. *United States v. Virginia*, 518 U.S. 515, 533

(1996).  Under that level of review, "[t]he State must show at least that the challenged classification serves important governmental objectives and that the discriminatory means employed are substantially related to the achievement of those objectives." *Id*. (citations and punctuation omitted).  Finally, if neither of the above apply, then a plaintiff's right to equal protection is violated only if the policy is not "rationally related to a legitimate government purpose."  *See City of Dall. v. Stanglin*, 490 U.S. 19, 25 (1989).

In this case, there is no fundamental right to appear in a yearbook.  *C.f.*, *Kadrmas v. Dickinson Pub. Sch.*, 487 U.S. 450, 458 (1988) (recognizing that the Court has never "accepted the proposition that education is a 'fundamental right,' . . . which should trigger strict scrutiny when government interferes with an individual's access to it").  But Sturgis urges intermediate scrutiny, contending that the "women-must-wear-drapes" requirement amounts to sexual stereotyping that is facially discriminatory.  The District counters that the policy is sex neutral because both sexes were required to wear specific clothing—boys were not allowed to wear drapes.  Both arguments have some appeal, and the Court finds that the decision should be made on a more complete record.

Deferring decision necessarily rejects the *per se* dismissal rule adopted in *Karr*: "Where a complaint *merely* alleges the constitutionality of a high school hair and grooming regulation, the district courts are directed to grant an immediate motion to dismiss for failure to state a claim for which relief can be granted."  *Karr*, 460 F.2d 617–18 (emphasis added).  *Karr*'s *per se* rule does not apply for three reasons.  First, *Karr* does not address alleged sex discrimination.  As the opinion notes, "In this case, however, the theory . . . is that, *as between male students*, any classification based upon hair length contravenes the Equal Protection guarantee."  *Id*. at 616

4

(emphasis added) (distinguishing *Crews v. Cloncs*, 432 F.2d 1259, 1266 (7th Cir. 1970) (finding equal-protection violation where the school policy "appl[ied] solely to male students and not to female students")). Here, Sturgis squarely raises the sex-discrimination argument *Karr* avoided. *If* the record ultimately shows sex-based discrimination, then intermediate scrutiny would apply. *City of Cleburne*, 473 U.S. at 441. Second, *Karr* reached its *per se* rule after considering the school board's justifications for limiting hair length based on a record developed during a four-day trial. The Court concluded that "on a record such as this," a rational basis existed to support the rule. *Karr*, 460 F.2d at 617. Here, there is no record, and the District has not explained its justifications. Finally, the *Karr per se* rule is premised in part on the minimal standard of review and the somewhat uniform justifications offered for "hair and grooming" standards in classrooms. *Id*. Although the issues may be similar, the justifications for grooming standards in a classroom may not track the reasons justifying a dress code for the senior portrait section of a yearbook. They may, but at this point the District has not offered its rationale.[1]

As stated, this case is before the Court on a Rule 12(b)(6) motion, and at this point, the record fails to reflect the District's justifications for denying Sturgis's request. Whether a rational-basis or intermediate-scrutiny test ultimately applies, the Court still needs to hear and consider the justifications before deciding, as a matter of law, whether the District's justifications survive the applicable level of scrutiny.

---

[1] The District has attempted to convert the Rule 12(b)(6) motion into a Rule 56(a) motion for summary judgment by submitting exhibits outside the record. Given the fact that the supplementation occurred in a reply, and because even the supplemented record fails to reveal the District's justifications, the Court strikes the exhibits and declines to convert the motion under Rule 12(d). The Court has likewise ignored Sturgis's arguments that exceed the record.

Similarly, the record is not complete with respect to the wording or contours of the disputed policy or how it affected the students.[2] These facts could impact the scrutiny that applies. For example, Sturgis bases her arguments on Title VII sex-based stereotyping cases such as *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989). If she is correct that Title VII cases are persuasive, then several circuits have held—after *Price Waterhouse*—that certain sex-differentiated appearance standards did not constitute sex-based discrimination. *See*, *e.g.*, *Jespersen v. Harrah's Operating Co., Inc.*, 392 F.3d 1076, 1083 (9th Cir. 2004) (applying "unequal-burdens" test and finding no discrimination where men and women were required to maintain professional appearance in different ways); *Frank v. United Airlines, Inc.*, 216 F.3d 845 (9th Cir. 2000); *Harper v. Blockbuster Entm't Corp.*, 139 F.3d 1385 (11th Cir. 1998); *Tavora v. N.Y. Mercantile Exch.*, 101 F.3d 907 (2d Cir. 1996); *see also Willingham v. Macon Tel. Publ'g Co.*, 507 F.2d 1084, 1092 (5th Cir. 1975) (finding no discrimination where both sexes were "being screened with respect to a neutral fact, *i.e.*, grooming in accordance with generally accepted community standards of dress and appearance").

Moreover, it appears that the facts should be considered in light of *Personnel Administrator of Massachusetts v. Feeney*, where the Court provided a framework for addressing policies that are potentially sex neutral. 442 U.S. 256, 273 (1979). If the policy, once articulated, proves to be sex neutral, then it appears Sturgis would be required to show "discriminatory intent" before intermediate scrutiny applies. *United States v. Lampkin*, 68 F.3d 467 (5th Cir. 1995) ("Because Lampkin has not demonstrated that there was a discriminatory

---

[2]At this point, it appears the policy was not written, and it does not appear in the "Yearbook" section of the Student Handbook attached to the Amended Complaint.

intent behind the classification of the drugs, it will survive an equal protection analysis if it bears a rational relationship to a legitimate end.") (citation and quotations omitted); *see also Longoria v. Dretke*, 507 F.3d 898, 904 (5th Cir. 2007) (holding that grooming-standards plaintiff failed to show "purposeful discrimination"); *Zalewska v. Cnty. of Sullivan, N.Y.*, 316 F.3d 314, 323 (2d Cir. 2003) ("In the absence of discriminatory intent, gender-neutral classifications that burden one sex more than the other are subject only to rational basis review.") (citing *Feeney*, 442 U.S. at 271–74).

The Court has not reached any final rulings on the issues discussed in the two preceding paragraphs; the discussion is offered to highlight why the Court believes, out of caution, that a more complete record should be developed before considering the ultimate issues.

### 2. Municipal Policy or Custom

The Court also rejects the District's arguments that Sturgis failed to allege an official school-board policy or custom or that an official policymaker was involved as required to establish § 1983 liability. In the Amended Complaint, Sturgis alleged that she complained to the principal, the assistant superintendent, and ultimately the school board, which responded in writing on October 16, 2010, denying her request to include her yearbook picture. Amended Complaint [3] ¶¶ 23, 24, 26, 27. As pointed out by the District, the school board is the sole policymaker for school districts in Mississippi. Also, it is well settled that a single decision by a final policymaker can give rise to liability under § 1983. *See Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 406 (1997) (citing *Pembaur v. Cincinnati*, 475 U.S. 469, 485 (1986)). Based solely on the pleadings, the Amended Complaint sufficiently pleads these § 1983 elements.

      C.      Title IX

In Count I of her Amended Complaint, Sturgis alleges that the District violated Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681(a).  Title IX provides, in pertinent part, that "no person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance."  *Id*.  Defendant seeks dismissal contending essentially that discrimination under Title IX cannot exist absent an equal-protection violation.  Defs.' Mem. Supp. Mot. to Dismiss [14] at 15.  Based on that argument, the motion is denied for the same reasons the equal-protection claim survives.

There is, however, an issue that should be more fully addressed if this matter is again before the Court on a dispositive motion.  Sturgis notes that the school receives funds from the Department of Agriculture and posits that it must follow the regulations adopted by that department.  Those regulations include 7 C.F.R. § 15a.31(b)(5) (2011), which interprets Title IX as prohibiting "discriminat[ion] against any person in the application of any rules of appearance."  *See* Pl.'s Mem. [21] at 6.  Sturgis also states that the school is subject to the regulations of the Department of Education, but she fails to note that in 1982, the Secretary of Education amended "the Title IX regulation (nondiscrimination on the basis of sex) by revoking § 106.31(b)(5) which prohibits discrimination in the application of codes of personal appearance."  Nondiscrimination on the Basis of Sex in Education Programs and Activities

8

Receiving or Benefitting from Federal Financial Assistance, 47 Fed. Reg. 32, 526–02 (July 28, 1982) (codified at 34 C.F.R. pt. 106).[3]

The Court has not attempted to resolve the apparent dispute, but at least one commentator concludes that "Title IX has been rendered largely ineffective as a method of challenging dress codes." Carolyn Ellis Staton, *Sex Discrimination in Public Education*, 58 Miss. L.J. 323, 334 (1998) (although noting that "some commentators believe that a challenge under Title IX might still be viable"). No holding will be made at this point, but the parties are directed to better address the conflicting regulations if the District again files a dispostive motion.

III.     Conclusion

The legal issues in this case will likely arise again at the summary judgment stage. For now, the Court finds that dismissal is premature. Nevertheless, the parties are probably in a sufficient position to assess the strengths and weaknesses of their cases. Thus, an early mediation would be beneficial. The parties are ordered to set a mandatory mediation before United States Judge F. Keith Ball within 30 days of this order. If mediation fails, the parties are instructed to set the case for case-management conference before the magistrate judge.

**SO ORDERED AND ADJUDGED** this the 15th day of September, 2011.

s/ *Daniel P. Jordan III*
UNITED STATES DISTRICT JUDGE

---

[3] For what it is worth, every other federal department or agency to offer Title IX regulations follows the Department of Education's interpretation. *See* 3 C.F.R. § 113.400; 6 C.F.R. § 17.400; 8 C.F.R. § 54.400; 10 C.F.R. § 5.400; 10 C.F.R. § 1042.400; 14 C.F.R. § 1253.400; 15 C.F.R. § 8a.400; 18 C.F.R. § 1317.400; 22 C.F.R. § 146.400; 22 C.F.R. § 229.400; 24 C.F.R. § 3.400; 29 C.F.R. § 36.400; 31 C.F.R. § 28.400; 32 C.F.R. § 196.400; 34 C.F.R. § 106.31; 36 C.F.R. § 1211.400; 38 C.F.R. § 23.400; 40 C.F.R. § 5.400; 41 C.F.R. § 101-4.400; 43 C.F.R. § 41.400; 44 C.F.R. § 19.400; 45 C.F.R. § 618.400; 45 C.F.R. § 2555.400; 49 C.F.R. § 25.400.